IN THE MATTER OF THE ESTATE OF JOHN CASSIDY, DECEASED.

Penobscot.    Opinion November 25, 1922.

*Under the succession tax statute where a contingency creates uncertainty regarding the ultimate succession to the title to property remaining after a trust ceases, the tax assessment must be deferred until uncertainty has become certainty, by a contingent interest becoming vested either in possession, or in right.*

The literal words of the succession tax statute, having regard to the interdependency of its parts as a single law, manifestly, in cases where the interests passing are incapable of being valued and taxed without delay, must yield to a construction which is both reasonable and practicable.

In order to levy the excise it is essential that the succession should be ascertainable, either in point of actual fact, or, the precise fact not being available, then, theoretically, in accordance with such method, if there be any, as shall have been legislatively defined.

Where, as in the instant case, a contingency creates uncertainty regarding the ultimate succession to the title to property remaining after a trust ceases, the tax assessment must be deferred until uncertainty has become certainty, by virtue of a contingent interest becoming vested in possession, or at least vested in right.

There is no uncertainty regarding that which an annuitant already has received, and the right of succeeding to or receiving this is assessable immediately. Certain, too, is it that hereafter the beneficiary will be paid four thousand dollars annually for life. What the will gives additionally is conditioned on the exercise of a trustee's discretion, and that which may never pass is not

presently liable to the payment of a succession due.   The present value of the future beneficial interest which is certain should be ascertained, and a tax fixed thereon and collected.   The case should then be held open for the making of further assessments, from time to time, if there shall be occasion.

On report.   This is an appeal by the State of Maine, and Lucile C. O'Brien, one of the annuitants, from the decree of the Judge of the Probate Court in the county of Penobscot in the assessment of inheritance tax in the estate of John Cassidy, late of Bangor, deceased. Under the provisions of the will of testator the whole estate was given to trustees in trust to pay certain annuities during the lives of his children and the life of the survivor.   The trust then ceases and the property so held in trust is thereupon to "vest in and become the property of" all the lineal descendants, if any, then living, of testator, "in same manner and in same proportions as shall then be provided by the then existing laws of the State of Maine, for the descent among the lineal descendants of intestate property, real and personal."   If no lineal descendants of testator be then living, all of said estate to pass to and become vested in testator's sister, Ellen Herlihy, if living, otherwise to be divided among those persons who shall then constitute her lineal descendants under the laws of the State of Maine, as they shall then exist for the descent of intestate property, real and personal.

John Cassidy died March 25, 1918, leaving four children and two grandchildren surviving him, also a sister, Ellen Herlihy, who has six children and three grandchildren now living.

The Judge of the Probate Court assessed an inheritance tax on the interest of each life annuitant, and further decreed that inasmuch as it cannot now be determined who the person or persons are to whom the balance of the estate descends, no further tax is assessable at this time.

From the decree the State of Maine appealed claiming that it was not impossible to assess a tax upon the remainder of the estate at this time, and that it was not necessary to determine absolutely who the persons are who will take the remainder of said estate in order to determine the amount of the tax to be paid upon said remainder.

Lucile C. O'Brien, one of the annuitants, also appealed, raising the question, among others, as to whether the assessment was properly made on the theory that the appellant is to receive during her lifetime ten thousand dollars annually, instead of four thousand dollars

annually for certainty, as provided in the will, and more annually to
the maximum of ten thousand dollars, in the discretion of the trustees,
the payment of this six thousand dollars annually additional being
discretionary with the trustees, thus becomes uncertain and con-
tingent.   The State's appeal is dismissed.   That of the annuitant
is sustained.   Both cases are remitted to the Supreme Court of
Probate for appropriate decrees.

The case is fully stated in the opinion.

*Ransford W. Shaw, Attorney General and Philip D. Stubbs, Assist-
ant Attorney General,* for the State of Maine.

*Fellows & Fellows,* for Lucile C. O'Brien, one of the Appellants.

*Ryder & Simpson,* for the Estate of John Cassidy.

SITTING:   CORNISH, C. J., SPEAR, PHILBROOK, DUNN, WILSON,
DEASY, JJ.

DUNN, J.   Mr. John Cassidy created a testamentary trust
embracing his entire estate, both his will and a codicil having relation
to the subject.   By the will he invested a discretionary power in
trustees to pay annuities, none in excess of four thousand dollars,
for support and maintenance, so long as any of his children should
live.   Immediately following this provision in that document is a
paragraph in these words:

"In the event that any of the beneficiaries do not draw yearly to
the amount of four thousand dollars, then the Trustee shall retain
the remainder yearly, and give credit to the  beneficiaries for that
amount, and they shall also allow Savings Bank interest on such
remainder from year to year, and hold the accumulations together
with the accrued interest at the above rate, as the property of each
beneficiary, and for the benefit of each of the beneficiaries in case
they should need it in the future.   All the same to be subject to the
demand of either of the beneficiaries at any time.   I make this pro-
vision for accumulating any part of the four thousand dollars that
shall be needed, as aforesaid, because I deem that my Trustees can
more safely invest the fund and  make it less difficult for my
beneficiaries."

The codicil mentioned broadens discretion to the extent of per-
mitting the payment of ten  thousand dollars, rather than four
thousand dollars.   It leaves the quoted clause, concerning the

accumulating of unused balances, not only unchanged, but ratified, in common with other provisions of the will, by a general confirmatory phrase.

When the trust ceases, the property so held is to "vest in and become the property of" all the lineal descendants, if any, then living, of the testator, "in the same manner and in the same proportions as shall then be provided by the then existing laws of the State of Maine, for the descent among lineal descendants of intestate property, real and personal." If no lineal descendants of testator be then living, all said estate is to "pass to and become vested in" testator's sister, Ellen Herlihy, if living; otherwise it shall be divided among those persons who shall then constitute her lineal descendants, under the laws of the State of Maine, as they shall then exist for the descent of intestate property, real and personal."

The testator died in 1918. Four children, two grandchildren, and a sister survived him. The sister has six children and three grandchildren.

In dealing with the question of succession taxes, the Penobscot Probate Court, after assessing what it determined, less any exemption, to be the amount of each annuitant's right to succeed to or to receive that which had been left for him, postponed further action awaiting the removal · of uncertainty as to those persons who, in the course of events, will take the now contingent remainder. Appeals were made, for different reasons, one by the State of Maine and the other by an annuitant. The cases are here on report.

### THE STATE'S APPEAL

is meritless. The exaction imposed by the statute upon "all property . . . which shall pass by will . . . to any person," is not, strictly, a tax on the property passing, but an excise or duty, with exemptions and rates determinable with reference to the particular succession, which is enforced against the privilege of so succeeding to or receiving the title to property. R. S., Chap. 69, Sec. 1; *State* v. *Hamlin*, 86 Maine, 495. Viewed from a somewhat different angle, the privilege charge which sovereignty makes is well hit off by the expression that it is the transmission from the dead to the living, and not the thing transmitted, that is subject to the tax, 127 A. S. R., 1037. In order to levy the excise, it is essential that the succession

should be ascertainable, either in point of actual fact, or, the precise fact not being available, then, theoretically, in accordance with such method, if there be any, as shall have been legislatively defined.

Where, as in the present case, the remainder over is contingent, and, at the time of hearing, the court could not know whether the remainder would go to lineal descendants of the decedent, or to his sister, or to that sister's lineal descendants, it was only too plain that the particular succession would remain unascertainable until, ultimately, time should remove the uncertainty. On the other hand, the statute book may be searched in vain for any grant of power making an interest of this nature presently taxable, or, rather, presently liable for the payment of a tax. It would be grave error to suppose that the authorizing of compromises by the attorney general and executors or trustees,—not where there is doubtfulness in respect to the eventual takers—but where, for reasons readily conceivable, the present value of an actual interest cannot be computed—contemplated a present taxing by a judicial decree. R. S., Chap. 69, Sec. 2; 1921 Laws, Chap. 175. A compromise must find its source within the statute and without a court's decree. Nor does the direction of Section 9 of Chapter 69, R. S., that taxes shall be paid in, and in some instances before, two years after the granting of letters testamentary or of administration, affect the already indicated conclusion of this opinion. The literal words of the statute, having regard to the interdependency of its parts as a single law, manifestly, in cases where the interests passing are incapable of being valued and taxed without delay, must yield to a construction which is both reasonable and practicable. The tax of the first section of the statute is put by the eighth section upon the actual value of the property, as a judge of probate shall find it to be. Other sections, (Sections 15, 16) have relation to the payment of assessments laid, and still another, (Section 11) renders fiduciaries liable to the State, upon their official bonds, for failure of payment. Clearly, from the context of the statute as a whole, the meaning of the Legislature was, that the prescribed rates should be applied, not upon a mere possible interest, but upon a beneficial interest, within the time appointed, when consistently possible.

The tax then, let it be said in repetition, must be laid upon and subtracted from a definitely existing interest; the bare possibility of an interest will not suffice. The duty must be upon that which has

passed by the will, within the statute's contemplation, and not on that which may never pass. Which is but another way of saying, that where a contingency makes succession uncertain, the tax assessment must be deferred until uncertainty has become certainty, by virtue of a contingent interest becoming vested in possession, or at least vested in right.

Courts elsewhere, in analogous situations, and commentators on similar statutes, take a like view. *Howe* v. *Howe*, 179 Mass., 546, 55 L. R. A., 626; *Re Hoffman*, 143 N. Y., 327, 38 N. E., 311; *Re Roosevelt*, 143 N. Y., 120, 25 L. R. A., 695; *Re Dows*, 167 N. Y., 227, 52 L. R. A., 433; *Billings* v. *People*, 189 Ill., 472, 59 L. R. A., 807; *Note, 127 A. S. R., 1035, 1076.*

## The Other Appeal

raises the question whether an assessment was rightly based on the theory that the appellant will receive ten thousand dollars yearly.

Payments thus far have been at that rate. To the trustees it now seems reasonable that they should continue so to pay. This is consequential, respecting the pending issue, with regard to what has been done, only. For, that deliberate judgment of the trustees, which must rule what shall be done in the varying conditions of the future, if such conditions there shall be, may cause the amount of annual payments to fluctuate. The gauge of a decree concerning futurity, as we have seen, must be found in an assurance of actuality, and not on likelihood.

What this will gives, beyond the sum of four thousand dollars annually, is conditioned upon the exercise of a discretion. In brief, reads the will, four thousand dollars to each beneficiary, by way of withdrawals for indicated purposes, the trustees so approving; otherwise, withdrawals for those purposes to the extent that the trustees shall sanction, with the amount of the difference between the aggregate of the withdrawals and four thousand dollars to be kept, interest bearing, in readiness for the beneficiary.

The codicil, in effect, struck out the word "four" and put "ten" in its stead in the annuity creating clause. There is no pretension of doing more. The testator is left saying still, in substance, four thousand dollars, or the equivalent thereof, in every year; the trustees supervising what shall be expended in a named way. And, in further

empowerment of the trustees, if you shall deem four thousand dollars inadequate for a beneficiary in any year, expend as much additionally as you will from my estate, but not more than ten thousand dollars, inclusive of the four thousand. To this conclusion do the testator's words lead. So leading they call up again the feature of uncertainty.

It was not the purpose of the Legislature, it may be said another time, upon the prompting of the fit suggestion of counsel in argument, to compel the payment of a tax on a privilege which as to vesting, actually or in right, yet remains impossible of determination. One should not be obliged to pay for that which may never be his. *Re Roosevelt,* supra; 26 R. C. L., 201, 202; 37 Cyc., 1574, 1580. And no such unjust result necessarily need be attained. That which the beneficiary has received is certain. A tax assessment and payment must be made accordingly. Certain, too, in the eye of the statute, is the annual payment of four thousand dollars to the beneficiary for life. The present value of that beneficial interest should be ascertained in the manner that the statute denotes, and the tax thereon fixed and collected. The case should then be held open for the making of further assessments, from time to time, if there shall be occasion.

> *The State's appeal is dismissed.*
> *That of the annuitant is sustained.*
> *Both cases are remitted to the*
> *Supreme Court of Probate for*
> *appropriate decrees.*