### ESTATE OF ANNIE E. MEIER

Lincoln.   Opinion, November 26, 1949.

*Sanford L. Fogg,* for petitioner.

*Ralph W. Farris, Attorney General,*
*Boyd L. Bailey, Assistant Attorney General,*

for respondent.

SITTING: MURCHIE, C. J., THAXTER, FELLOWS, MERRILL, NULTY, WILLIAMSON, JJ.

MURCHIE, C. J. This petition for the abatement of an inheritance tax, filed in the Probate Court in Lincoln County, and reported to this court, on agreed facts, for the determination of questions of law, as authorized by R. S., 1944, Chap. 142, Sec. 30, involves a tax assessed against the Estate of Annie E. Meier, late of Boothbay Harbor, more than 11 years after her death. She died March 10, 1937. The Trustee of a revocable Trust established by her on June 22, 1933 advised the Inheritance Tax Commissioner, the official then charged with the assessment of inheritance taxes, of the death on April 2, 1937. The income of the trust was payable to Mrs. Meier, or was to be applied for her use by the trustee, as long as she lived. An inventory of the property held in it at the time of her death was filed with commissioner on September 26, 1938. No tax was assessed against the estate until July 22, 1948. That under review was assessed on November 16, 1948, when the earlier one was vacated and the time of payment extended to December 1, 1948, without interest.

At the death of Mrs. Meier, who died holding the legal title to no property whatsoever, real estate in Maine valued at $3,200 and intangibles amounting to $107,590.58, including $21,992.50 in fractional interests in mortgages secured by real estate not located in Maine (less all proper debts and expenses, and taxes, if any), all held in the trust aforesaid, passed to her two daughters under its provisions. The State Tax Assessor, who succeeded the Inheritance Tax Commissioner as the taxing authority (see P. L., 1947, Chap. 354), fixed the allowable deduction for debts and expenses of administration at $5,163.77. The tax is based on the succession to all the property held in the trust, less that allowance.

The Indenture establishing the Trust was executed in New York, and provides expressly that it is to be construed under the laws of that state. The trustee named was a New York bank. No provision was made for a successor trustee

if that bank should elect to resign its trust. In lieu thereof, it was provided that the trust should terminate on such a resignation. The indenture reserved the right to the grantor, however, to alter or amend its provisions and an amendment made November 10, 1934 wrote in a provision for the selection of a successor trustee. A later amendment, effected July 25, 1935, confirmed the appointment of the Petitioner, an individual residing in the State of Missouri, as such. The indenture reserved to the grantor, also, the powers "to direct the sale or other disposition" of any or all of the trust property; to control "the investment or reinvestment" of cash, and the "exercise or non-exercise" of conversion and subscription rights held in the trust; and to revoke the trust "in whole or in part." None of these was ever exercised.

While the entire net income of the trust was payable to Mrs. Meier, or was to be applied for her use, so long as she lived, and the trustee was authorized, in its discretion, to use out of the principal to provide for her care and support and that of the two daughters who took the property at her death, and provision was made that payments to or for said daughters, or either of them, were to be considered as made for her use, there is nothing in the agreed facts to indicate that any of the principal was used in the lifetime of Mrs. Meier or that any income was paid to or applied for the daughters. The result would not be affected had such facts, or either of them, been established. The tax as computed is applicable to the succession of all the property passing to the daughters under the trust.

The shares of the daughters were controlled by the terms of their respective lives. The money value of such shares, if both survived Mrs. Meier, as they did, was not ascertainable definitely at the time of her death, or thereafter until after March 29, 1944, when one of the daughters died. Subsequent to that time the petitioner furnished complete information concerning the trust, on the understanding, to

which the taxing authority agreed, that he was not "waiving any limitations or estoppel or other defense" against the assessment or collection of any tax which might be assessed. This information disclosed that the gross value of the property held in the trust had declined to $73,037.18 in the interval between March 10, 1937 and March 29, 1944, and that the paper evidences of all the intangibles were physically located outside the State of Maine and had been so located at all times. When Mrs. Meier died they were located in the States of New York and Missouri, but the money value represented by those held in each is not stated in the agreed facts.

The petitioner does not deny that the tax assessed, $1,062.20, is computed properly under P. L., 1933, Chap. 148, Secs. 2 and 3, now R. S., 1944, Chap. 142, Secs. 2 and 3, if the succession of the daughters is taxable and the fractional interests in mortgages secured by real estate located outside the State of Maine should not have been disregarded in determining the amount. The questions of law to be resolved, stated in language of identical effect with that in which they are set out in the report, although in different order, are (1) whether the intangibles, considering the place where the trust was established and was to be construed, and the location of the paper evidences thereof, were within the jurisdiction of Maine for inheritance tax purposes; (2) whether the fractional interests in mortgages secured by real estate located outside the state were includable in determining the amount of the tax, if any; and (3) whether the delay in the assessment has provided a complete defense against the taxation of the estate, or the trust, in any event.

That Maine is not precluded constitutionally from imposing an inheritance tax on the succession of intangible property subject to the control of one of its inhabitants at the time of death, because the legal title thereto is held in a revocable trust administerable without its borders, when

the *indicia* thereof are so located, does not admit of doubt since the Supreme Court of the United States, in deciding the cases of *Curry et al.* v. *McCanless,* 307 U. S. 357; 59 S. Ct. 900; 83 L. Ed. 1339; 123 A. L. R. 162; and *Graves et al.* v. *Elliott et al.,* 307 U. S. 383; 59 S. Ct. 913; 83 L. Ed. 1356, on May 29, 1939, declared, and reiterated, that the power of disposition of property "is the equivalent of ownership." Such a power was exercised by the will of its holder in the *Curry* case, it is true, but in the *Graves* case, as in the instant one, property passed under a trust indenture when the holder of the power died without exercising it. The instant case may be said to be more favorable to the imposition of a tax by the state of the decedent's domicile than the *Graves* case, since the facts seem to indicate that Mrs. Meier was domiciled in Maine when she placed her property in trust, as at her death, whereas in the *Graves* case the trust was established in Colorado by a resident of that state who moved to New York thereafter and died while domiciled there. The right of the state of New York to tax the succession was upheld.

There can be no point in multiplying authorities to support the principle that the state of domicile may tax intangibles passing under trusts, regardless of the facts that the legal title is held by a trustee residing in another state and that the *indicia* representing them are located physically outside its borders, but it may be well to note that while four Justices of the Supreme Court of the United States dissented from the *Curry* and *Graves* decisions, Mr. Justice Douglas, a little more than three years later, speaking for an unanimous court in *Central Hanover Bank & Trust Co. et al.* v. *Kelly,* 319 U. S. 94; 63 S. Ct. 945, 947; 87 L. Ed. 1282, cited the *Curry* case among others as authority for the declaration that:

> "It is much too late to contend that domicile alone is insufficient to give the domiciliary state the constitutional power to tax a transfer of intangibles where the owner, though domiciled with-

in the state, keeps the paper evidences of the intangibles outside its boundaries."

He said, in closing that opinion, that:

> "The significant facts are that the rights of the remaindermen derived solely from the trust agreement and that the grantor died domiciled in * * *"

the state whose power to tax was under review. Such are the facts here presented. The first stated claim of the petitioner must be denied so far as it is grounded, if at all, in challenging the right of Maine to impose the tax in question.

The constitutional right of the State to impose it being undoubted, it remains to be resolved whether the tax assessed was imposed by P. L., 1933, Chap. 148, Sec. 2, the law in effect at the time of Mrs. Meier's death. That issue cannot remain in doubt when reference is had to the statute. It imposes an inheritance tax "for the use of the state" on:

> "All property within the jurisdiction of this state and any interest therein belonging to inhabitants of this state * * * which shall pass:
>
> \* \* \*
>
> 2. By deed, grant, sale or gift except in case of a bona fide purchase for full consideration * * * made or intended to take effect in possession or enjoyment after the death of the grantor or donor * * *."

If any authority was needed to indicate that the words "within the jurisdiction" were intended to cover, and do cover, all the property of all persons domiciled in Maine at the time of death which the state has authority to tax by appropriate legislation, it may be found in the statement of Mr. Justice Stone in *Curry et al.* v. *McCanless, supra,* that:

> "From the beginning of our constitutional system control over the person at the place of his domicile and his duty there, common to all citizens, to con-

> tribute to the support of government have been deemed to afford an adequate constitutional basis for imposing on him a tax on the use and enjoyment of rights in intangibles measured by their value. Until this moment that jurisdiction has not been thought to depend on any factor other than the domicile of the owner within the taxing state, or to compel the attribution to intangibles of a physical presence within its territory, as though they were chattels, in order to support the tax."

Directly in point on the coverage of the statutory words "within the jurisdiction of this state," it may be noted also, is the Massachusetts case of *Frothingham et al.* v. *Shaw,* 175 Mass. 59, 55 N. E. 623; 78 Am. St. Rep. 475, where similar language, and facts, were in issue. There is no merit in the first stated claim of the Petitioner.

The same thing must be said with reference to the second. In support of it counsel for the Petitioner cites the single case of *Bates* v. *Decree of Judge of Probate,* 131 Me. 176; 160 A. 22. That case involved fractional interests in a trust, it is true, and denied the right of Maine as the state where the owner died domiciled to tax them, but the trust was one holding title to no property except real estate in Massachusetts and under the law of that state such interests were held to constitute real estate. The decision was controlled by the law of Massachusetts. The fractional interests here in question are not comparable. They constitute neither more nor less than intangibles as such property is generally known and fall clearly within the property defined by the statute as "within the jurisdiction of this state."

The Petitioner's final claim, that delay in assessing the tax has provided a defense against it, must also be denied. The claim is asserted in full recognition of the general principle that statutes of limitation do not run against the sovereign, *Inhabitants of Topsham* v. *Blondell,* 82 Me. 152;

19 A. 93; 34 Am. Jur. 307, Sec. 393, on the ground that the exception thereto, stated in the cited text in the words:

> "unless the state is necessarily included by the nature of the mischiefs to be remedied"

controls. We can see no basis for such a claim. A particular reason for the adoption of the general principle which was a part of the common law of England, as declared in *United States* v. *Hoar*, Fed. Cas. No. 15373; 2 Mason 312, was said in *Inhabitants of Topsham* v. *Blondell, supra*, to be:

> "that public remedies in preserving the public rights, revenues and property ought not to be lost by the laches of public officers."

If it could be said that this is not a complete answer to the suggestion that the State of Maine, as a sovereign, is "necessarily included," to use the controlling words of the excerpt quoted from the text of American Jurisprudence, we are referred to no particular statute of limitations said to carry any implication to that effect. In the instant case it is apparent that there can be no bar to the state's claim to a tax on the succession unless it accrued in a period of less than six years. We know of none. The tax assessable against the estate of Mrs. Meier was not susceptible of exact measurement for more than seven years after her death. Exactitude became possible only when one of her daughters, taking under her Trust, died. Even in cases where the sovereign loses rights under statutes of limitation the period thereof does not begin to run until the time when the measure of its claim can be accurately determined, as was the case in *Ex parte State ex rel. Davis* v. *Attorney General*, 206 (Ala.) 393; 90 So. 871. See also *Ware* v. *Greene*, 37 Ala. 494. In *Estate of John Cassidy*, 122 Me. 33; 118 A. 725; 30 A. L. R. 474, where the inheritance tax law of this state was under consideration, it was decided that no such tax could be levied, despite the provision for compromise carried by what is now R. S., 1944, Chap. 142, Sec. 12, until the amount of it was determinable with exactness. An

annotation following the report of the *Cassidy* case in A. L. R. calls attention to several types of statutes dealing with the taxation of interests not ascertainable at the time when inheritance or succession taxes are normally required to be paid. There can be no doubt that the tax in question could not have been assessed prior to March 29, 1944. It was assessed November 16, 1948. The elapsed time prior thereto is no bar to its collection.

The terms of the report provide that this court shall make final decision in the cause and that the State Tax Assessor shall determine and assess the tax in accordance with its decree. That assessed being in the proper amount the abatement sought must be denied and the case remanded to the Probate Court for dismissal of the petition and further appropriate action.

*Abatement denied.*

*Case remanded to the Probate Court in and for the County of Lincoln.*