## 18619

Robert M. VANCE, Surviving Administrator **D. B. N. C. T. A. of the** Estate of William J. Bailey, Respondent, v. SOUTH CAROLINA TAX COMMISSION, Appellant.

(153 S. E. (2d) 841)

*Messrs. Daniel R. McLeod, Attorney General,* and *Joe L. Allen, Jr.,* and *Joseph C. Coleman, Assistant Attorneys General,* of Columbia, *for Appellant,*

*Messrs. Brown, Jefferies & Mazursky,* of Barnwell, and *Henry Hammer, Isadore S. Bernstein* and *A. Crawford Clarkson, Jr.,* of Columbia, *for Respondent,*

March 14, 1967.

Bussey, Justice.

This action was brought by plaintiff, as the personal representative of the Estate of William J. Bailey, deceased,

to recover from the South Carolina Tax Commission the sum of $88,000, with interest thereon, which sum was alleged to be an overcharge or overpayment of South Carolina estate taxes, imposed by the provisions of the South Carolina Estate Tax Law then in force, namely, Sections 65-551 through 65-553 of the 1952 Code of Laws. The case was, by consent, referred to the Master in Equity for Richland County. A stipulation of certain key facts was entered into and the master took testimony and received other evidence. The appeal here is from an order of the Court of Common Pleas confirming the master's report, except as to his computation of interest, and awarding judgment for the plaintiff in the sum of $88,000, with interest thereon at the rate of one-half of one per cent per month from June 24, 1952. Interest awarded was by virtue of the provisions of Section 65-2656 of the supplement to the 1962 Code.

The following facts are stipulated. William J. Bailey died on April 11, 1948. His personal representatives, in order to avoid the accrual of penalties and interest, under Section 65-511 of the 1952 Code, on April 11, 1949, paid to the Commission the sum of $150,000, of which $24,468.85 was applied to the estate tax, and $125,531.15 was applied on account of the inheritance tax.

Thereafter, on June 24, 1952, the representatives, on the basis of an initial and tentative determination of the Federal Estate Tax by the Federal Internal Revenue Agent-in-Charge, paid the Commission an additional sum of $239,096-.73, of which $35,284.10 was applied on account of inheritance tax; the sum of $203,812.63 was applied on account of the estate tax, and the sum of $30,689.17 was applied to penalties and interest. All payments to the Commission were without protest.

The initial and tentative determination of the valuation of the net assets resulted in an allowable Federal Credit (reduction allowed for State death taxes paid) of $389,096-

.73. The valuation placed on the net estate by the Internal Revenue Agent-in-Charge was contested by the respondent in a Federal Court action, following payment of the Federal Estate Taxes. As a result of such contest refunds were made by the Federal Government based on a lesser valuation of the assets of the estate than that determined by the Agent-in-Charge, under which lesser valuation there was an allowable Federal credit (reduction allowed for State death taxes paid) of only $301,096.73, or $88,000 less than the allowable Federal credit based on the tentative determination or valuation by the Agent-in-Charge.

On October 29, 1956, formal application was made by the respondent to the Commission for refund of the $88,000, said application being based on the final determination of the Federal Estate Tax by the Federal Government, on October 22nd, 1956, reducing the allowable credit by the amount of $88,000.

On June 19, 1957, application to the Commission for a refund was denied, and on July 3, 1957, application for reconsideration of the denial was filed with the Commission on behalf of the estate. For reasons which we deem not here material, a hearing was not held by the Commission on the application for reconsideration until April 23, 1963. Thereafter, on December 18, 1963, counsel for the estate was informed by letter from the Commission, dated December 13, 1963, that the application for reconsideration and the refund were denied. The present action was instituted on January 11, 1964.

While the contentions of the appellant are several, its basic contention appears to be that the State of South Carolina is entitled to retain the estate tax collected and paid on the basis of the initial and tentative determination by the Federal Revenue Agent-in-Charge of the valuation placed on the net estate and the resulting allowable Federal credit, and that the final determination by the Federal Government of those matters has no effect and bearing on the estate taxes

which the State of South Carolina was entitled to receive. With this contention we do not agree.

The pertinent sections of the 1952 Code of Laws imposing the estate tax were Sections 65-551 and 65-553, and Section 65-551 read as follows:

"§ 65-551.  Imposition of tax.  A tax in addition to the inheritance tax imposed by chapter 7 of this Title is imposed upon the transfer of the net estate of every decedent, whether a resident or nonresident of the State, when the inheritance tax imposed by said chapter is in the aggregate of a lesser amount than the maximum credit of eighty per cent of the Federal Estate Tax allowed under the Federal Estate Tax Act. In any such case the inheritance tax so provided for shall be increased by an estate tax on the net estate so that the aggregate amount of tax due this State for such inheritance tax and the estate tax imposed by this section shall be the maximum amount of credit allowed under said Federal Estate Tax Act."

Section 65-553 of the 1952 Code, contained the following provision:

"The amount of the tax as imposed by § 65-551 shall be computed in full accordance with the Federal Estate Tax law in force at the time of the death of the decedent."

It is clear, we think, that the legislative purpose in enacting the foregoing sections was not to impose upon the estates of decedents any additional burden. The purpose of these statutes was simply to enable the State of South Carolina to take advantage of the 80% credit provision under the Federal Law, and divert and bring into the treasury of the State of South Carolina money which otherwise would be paid to the Federal Government as a part of the Federal Estate Tax.

Similar statutes were enacted in numerous states with the same intent and purpose as our statutes, and the tax inuring to the benefit of the states by such statutes has become known as a "windfall" tax. See *Willis v. Flournoy,*

236 La. 983, 109 So. (2d) 490; *In re Gallagher's Will,* 57 N. M. 112, 255 P. (2d) 317, 37 A. L. R. (2d) 149; *The New York Trust Company, et. al. v. Doubleday,* 144 Conn. 134, 128 A. (2d) 192.

The estate tax due South Carolina, by virtue of the said statutes was required to be computed in full accordance with the Federal Estate Tax Law in force at the time. The initial and tentative determination of valuation and the allowable Federal credit by the Internal Revenue Agent-in-Charge was only one step in the procedure under the Federal Estate Tax Law. Such determination was not final and the amount of estate taxes to which South Carolina was entitled by virtue of the statutes could not be determined with finality until there was a final determination by the Federal Government under the Federal Estate Tax Law as to the amount of the allowable Federal credit.

We have no difficulty in concluding that the State of South Carolina has actually received from the estate here involved, by way of estate taxes, the sum of $88,000 more than it was actually entitled to by virtue of the statutes. Our conclusion in this respect is supported by the decisions of this court in *Beidler v. South Carolina Tax Commission,* 162 S. C. 447, 160 S. E. 264, 272, and *Simmons v. South Carolina Tax Commission,* 134 S. C. 261, 132 S. E. 37. Neither of these decisions is directly in point, but each of them dealt with the analogous question of whether an initial computation under the Federal Estate Tax, as opposed to what was actually paid, would be a proper deduction against the South Carolina inheritance tax, the court holding in said cases that the Federal tax had to be credited upon the basis of what the Federal Government actually charged and collected.

Having determined that the State of South Carolina has collected and still holds the sum of $88,000 of the funds of the estate to which it is not entitled, we reach the more difficult question of what remedy, if any, is available to the respondent.

As above mentioned, none of the payments by the ■ estate to the Commission were made under protest.

Appellant contends that the estate tax here should have been paid under protest and timely action brought to recover the same pursuant to Sections 65-2661 *et seq.* of the 1952 Code of Laws. Alternatively, it is contended by appellant that the estate should have timely appealed under the provisions of Sections 65-509 or 65-510 of the 1952 Code. It is argued that the estate had an adequate remedy by virtue of one, or more, of these statutory provisions, and not having pursued any such remedy should now be barred.

We deem it unneccessary to analyze or discuss at length, the several statutes relied upon by appellant. Suffice it to say, that a study thereof convinces us that none of such statutes were by their terms applicable to the estate tax here involved. Moreover, none of such statutes, even if applicable, would have afforded the taxpayer a remedy since these statutes required affirmative action by the taxpayer within thirty days, a practical impossibility under the facts of this case since the taxpayer could not know precisely what to protest or appeal from until a final determination by the Federal Government, which did not occur until more than four years after the payment to the Commission.

In addition to there being no protest or appeal statute available to the estate at the time of payment, it appears that the Federal regulations, as a prerequisite to the estate obtaining credit from the Federal Government for the amount of estate taxes paid to South Carolina, required a certificate from the Tax Commission showing the amount paid and that no discount was allowed, no refund granted and no petition for a refund pending.

Since the foregoing statutes are inapplicable, upon what theory, if any, is the respondent entitled to recover? The decision of the lower court rests on two grounds. One, that respondent has a common law right of action under the principles enunciated by this court in the case of *Baker v. Allen*, 220 S. C. 141, 66 S. E. (2d) 618; two, that the

retention by the State of South Carolina of the sum of $88,000 of the funds of the estate, to which it is not entitled, is, in effect, a taking of private property for public use without just compensation and without due process of law, in violation of the applicable provisions of both the State and Federal Constitutions.

We deem it unnecessary to decide whether the instant case, is, perchance, maintainable under either of the theories adopted by the lower court, since the right to bring the action may be implied from the statute which imposes the tax.

In determining whether the taxpayer had a remedy for the recovery of the overpayment in this case the peculiar statutory provisions must be kept in mind.

It is apparent that the Legislature geared the determination of the amount of the State tax to the final computation of the Federal tax. The amount paid by the taxpayer to the State was not made pursuant to a final tax assessment, but was based upon an initial and tentative determination by the Federal authorities, which, known to all parties, was subject to revision in the final determination of the amount of the tax. When the taxpayer timely contested the amount of the Federal tax, he effectively preserved the right to an adjustment of the State tax. This was clearly the legislative intent, for otherwise the amount of the State tax would depend upon the initial determination by the Federal agents, unless in every event the taxpayer paid the State tax under protest, which, as hereinabove pointed out, would be ineffective under our statutes until a final Federal computation. The payment to the State was therefore in the nature of a deposit, held by the State for application against the final amount determined to be due. Under this situation, there was an implied obligation or contract on the part of the State to return any overpayment to the taxpayer.

While there was no statute specifically authorizing this action, we think the right to maintain it arises from the foregoing statutory obligation on the part of the State. The consent of the State to be sued arises by necessary implication from the terms of the statute under which the State received the tentative payment and became obligated to refund any excess over the tax finally ascertained to be due. *Chesterfield County v. State Highway Department,* 181 S. C. 323, 329, 187 S. E. 548.

Appellant contends that respondent here should be barred under the doctrine of laches. This contention is predicated primarily on the argument that respondent spent some six years pursuing administrative relief before the Commission when there was no administrative remedy available to respondent. We agree with the contention of the appellant that there was no administrative relief available to the respondent under the statutory law then in force and effect, and that the Commission had no power to order the refund applied for. This contention on the part of appellant is, however, hindsight. The application for a refund was finally denied by the Commission in December 1963, some months before the decision of this court in *City of Columbia v. Glens Falls Ins. Co.,* 245 S C. 119, 139 S. E. (2d) 529, wherein this court held that the provisions of Sections 65-2681 *et seq.,* of the 1962 Code of Laws were applicable only to *ad valorem* property taxes and the assessment of such property for tax purposes.

While the precise grounds for denial of the refund by the Commission do not appear in the record, it is clear that the Commission did not refuse the refund for lack of authority on its part. The only reasonable inference from the record is that the Commission itself, and counsel involved, were of the view that the Commission did have authority to order the refund if it determined that the estate was entitled thereto. We do not think that the respondent should be penalized under the doctrine of laches for pursuing an administrative remedy which all parties concerned clearly

thought was available, even though it has now been subsequently determined that such administrative remedy was not available.

While the appellant contends that respondent is not entitled to recover anything, appellant does not challenge respondent's entitlement to interest in accordance with the judgment of the lower court, if the respondent be entitled to recover at all.

For the reasons hereinabove set forth, we conclude that the lower court reached the correct result in rendering judgment in favor of the respondent. The judgment of the lower court is, in result, accordingly,

Affirmed.

Moss, C. J., Lewis and Brailsford, JJ., and Lionel K. Legge, Acting Associate Justice, concur.