David E. MOORE, et al.

v.

STATE TAX ASSESSOR.

Supreme Judicial Court of Maine.

Argued Nov. 15, 1985.

Decided Feb. 3, 1986.

Fenton, Chapman, Fenton, Smith & Kane, William Fenton (orally), Bar Harbor, for plaintiff.

Clifford B. Olson (orally), Asst. Atty. Gen., Augusta, for defendant.

Before McKUSICK, C.J., and NICHOLS, ROBERTS, WATHEN, GLASSMAN and SCOLNIK, JJ.

GLASSMAN, Justice.

David E. Moore and Manufacturers Hanover Trust Company, executors of the estate of Edith P. Moore (executors), appeal from the order of the Superior Court, Kennebec County, affirming the decision of the State Tax Assessor (Assessor) that a redetermination of the Maine inheritance and estate taxes was barred by the statute of limitations. For the reasons hereafter set forth, we hold that 36 M.R.S.A. § 3741 (1978) and 36 M.R.S.A. § 3524 (Supp.1985–1986), require a redetermination of the taxes payable by the estate of Edith P. Moore, and accordingly vacate the order.

I

Edith P. Moore died in April, 1975. The executors have consistently maintained, and the Assessor accepted, that Edith Moore was domiciled in Maine at the time of her death. In December, 1976, the Assessor certified to the executors the amount of the Maine inheritance and estate taxes due with the proviso that the "Entire Determination [is] Subject to Review After Federal Audit." On May 20, 1977, the Assessor made a second certification of the inheritance and estate taxes.[1] There is no indication in the record that this second certification purported to be a final certification or that it reflected the results of a federal audit.[2] At the time of the May 1977 certification the executors had the right to petition the Probate Court for an abatement within 90 days of the certifica-

1. The May 1977 certification assessed taxes of $280,879 against the Moore estate. The executors had paid $275,000 on April 6, 1976. On May 31, 1977, the executors paid the balance due.

2. At oral argument counsel for the executors stated that the federal audit was completed in May, 1977.

tion. 36 M.R.S.A. § 3801 (1965) (repealed 1978). The executors did not avail themselves of this right.

In July 1977 the executors received notice of a claim of the New York State Tax Commission that Edith Moore had been domiciled in New York. The executors promptly brought to the attention of the Assessor both the New York claim and New York's intention to invoke the provisions of the Uniform Interstate Compromise of Death Taxes Act. On two subsequent occasions the executors requested that the Assessor either intervene in the New York proceedings or participate in the forging of an interstate compromise. The Assessor rejected these requests.[3]

In January 1979 the executors notified the Assessor that New York had raised a claim against the estate for income taxes for the years 1960 through 1970, and that the executors would seek a partial refund of the federal estate tax based upon an anticipated reduction in the federal gross estate resulting from payment of New York income taxes. The executors then filed a timely claim, pursuant to 26 U.S.C. § 6511(a) (1982), for a refund of the federal estate tax.

In March 1980 the executors requested that the Assessor, pursuant to 36 M.R.S.A. § 141(2)(E) (Supp.1985–1986), agree to extend the time limitations for assessment of the Maine estate and inheritance taxes. In April 1980 the executors petitioned the Assessor to abate the taxes pursuant to 36 M.R.S.A. § 141(3) (Supp.1985–1986). The Assessor denied both requests, and the ex-

ecutors did not make a timely request for reconsideration of these denials pursuant to 36 M.R.S.A. § 151 (Supp.1985–1986).

The executors reached a compromise settlement in February, 1982, with New York of that state's income and inheritance tax claims and received in June, 1982, a partial refund of the federal estate tax as a result of the New York payments. The executors then requested a redetermination of the Maine inheritance and estate taxes. The Assessor denied the request on the ground that his authority to abate the tax was time-barred. When the executors petitioned for reconsideration, the Assessor again ruled that any redetermination was time-barred. The executors pursuant to section 151 filed a timely petition for review in the Superior Court. The executors appeal from the order of the Superior Court holding that any redetermination was time-barred.

## II

Maine imposes an inheritance tax at varying rates. 36 M.R.S.A. §§ 3461–3471 (1978 & Supp.1985–1986). In addition, Maine imposes an estate tax that is designed to divert to the use of the state the maximum allowable credit under the federal estate tax. 36 M.R.S.A. §§ 3741, 3743–3745 (1978 & Supp. 1984–1985).[4] The Assessor contends that any redetermination of the taxes on the Moore estate is barred by the general three-year period of limitations for assessment and abatement under section 141[5] and by the 15-day period for

---

**3.** While the executors abandoned at oral argument their contention that the Assessor's failure to invoke the provisions of the Uniform Interstate Compromise of Death Taxes Act, 36 M.R.S.A. §§ 3981–3985 (1978 & Supp.1985–1986), was arbitrary and capricious, we note that a timely and good-faith invocation of these provisions may have obviated any need for the instant litigation. This statute and its companion statute, the Uniform Interstate Arbitration of Death Taxes Act, 36 M.R.S.A. §§ 3911–3924 (1978 & Supp. 1985–1986), were designed to resolve in a harmonious manner the long existing problem of double domicile and the "unfortunate result" of double taxation. Uniform In-

terstate Arbitration of Death Taxes Act, prefatory note (1943), *reprinted in* 8A U.L.A. 521–22 (1983).

**4.** Neither tax will apply to the estate of any person whose death occurs after June 30, 1986. § 3402 (Supp.1984–1985).

**5.** 36 M.R.S.A. § 141 (Supp.1985–1986) provides:
   **1. General provisions.** Unless otherwise provided, any amount of tax which a person declares on a return filed by him with the State Tax Assessor to be due to the State shall be deemed to be assessed at the time the return is filed and shall be payable on or

petitioning for reconsideration under section 151. The executors contend that the Assessor has not yet made a final determination of the Maine estate tax because a final determination cannot be made until the federal estate tax has been finally determined. The unambiguous language of the Maine estate tax and the legislative intent behind it fully support this position. In addition, we find that the interrelationship between the inheritance and estate taxes necessitates a redetermination of the inheritance tax when the statute requires the estate tax to be redetermined.

The operative section of the Maine estate tax provides in pertinent part:

There *shall be assessed* by the State Tax Assessor, in addition to the inheri-

tance tax provided, an estate tax upon all estates which are subject to taxation under the Federal Revenue Act of 1926 as heretofore amended. Said tax is imposed upon the transfer of the estate of every person, who at the time of his death was a resident of this State. The amount of said tax shall be the amount by which 80% of the estate tax payable to the United States under said Federal Revenue Act shall exceed the aggregate amount of all estate, inheritance, legacy and succession *taxes actually paid to the several states* of the United States in respect to any property owned by such decedent, or subject to such taxes as a part of or in connection with his estate.

before the date prescribed for filing the return, determined without regard to any extension of time granted for filing the return. When a return is filed, the State Tax Assessor shall cause it to be examined and may conduct such audits or investigations as he believes necessary to determine the correct tax liability. If he determines that the amount of tax shown on the return is less than the correct amount, the State Tax Assessor shall assess the tax due the State. No such assessment shall be made after 3 years from the date the return was filed or the date the return was required to be filed, whichever is later. At any time within the appropriate assessment period prescribed by this section, the State Tax Assessor may make a supplemental assessment if he finds that any previous assessment is imperfect or incomplete in any material aspect.

**2. Exceptions.**

**A.** An assessment may be made within 6 years from the date the return was filed if the tax liability shown on the return is less than ½ of the tax liability determined by the State Tax Assessor and the additional liability is attributable to information which was required to be reported but was not reported in the return.

**B.** An assessment may be made at any time with respect to a time period for which a fraudulent return has been filed.

**C.** An assessment may be made at any time with respect to a time period for which a return has become due but has not been filed. If any person failing to file a return fails to produce, within a reasonable time after notice, information which the State Tax Assessor believes necessary to determine tax liability for the period involved, the State Tax Assessor may assess an estimated tax liability based upon the best information otherwise avail-

able. In any proceeding for the collection of tax for the period involved, that estimate shall constitute prima facie evidence of the tax liability.

**D.** If the State Tax Assessor finds that the collection of tax for any reporting period will be jeopardized by delay, he may, upon giving notice of this finding to the person liable for the tax, demand an immediate return with respect to that period or immediate payment of the tax declared to be in jeopardy, or both, and may terminate the current reporting period and demand an immediate return and payment with respect to that period. Assessments for periods as to which jeopardy has been declared are immediately payable and proceedings for collection may be commenced at once. The person liable may stay collection by petitioning, in accordance with section 151, for reconsideration of the assessment and by depositing with the State Tax Assessor, within the time period specified in section 151, a bond or other security in the amount of the assessment with respect to which the stay of collection is sought. Any finding by the State Tax Assessor of jeopardy or of tax liability as to which immediate payment is demanded under this paragraph is presumed to be correct, and the burden of showing otherwise shall be upon the taxpayer.

**E.** The time limitations for assessment specified in this section may be extended to any later date to which the State Tax Assessor and person liable for tax agree in writing.

**3. Abatement.** If justice requires, the State Tax Assessor may, with the approval of the Governor, abate, within 3 years from the date of assessment, all or part of any tax assessed by the State Tax Assessor.

36 M.R.S.A. § 3741 (1978) (emphasis added).

> The statute creates in effect a formula: Maine estate tax = 80% (estate tax payable to the United States under the 1926 Federal Revenue Act) – all state death taxes actually paid.

In other words, the determination of the Maine estate tax rests on a determination of all state death taxes other than the Maine estate tax and on a determination of the federal estate tax. Thus, section 3741 requires a computation "of all [death] taxes *actually paid* to the several states of the United States." (emphasis added). It further requires a computation of "80 percent of the estate tax payable to the United States under [the 1926] Federal Revenue Act." This determination of what is "payable to the United States" under the 1926 Act is a complicated process. The Internal Revenue Service computes "the estate tax imposed by the Revenue Act of 1926" as equal to 125% of the presently available state death tax credit. 26 U.S.C. § 2011(d) (1982); 26 C.F.R. § 20.2011–1(d) (1985). The presently available state death tax credit requires computation of the adjusted gross estate. 26 U.S.C. § 2011(b). Determination of the credit further requires receipt by the Internal Revenue Service of evidence that state death taxes have actually been paid. 26 U.S.C. § 2011(a) ("[death] taxes actually paid"); 26 C.F.R. § 20.2011–1(c)(2) ("[b]efore the credit for State death taxes is allowed, evidence that such taxes have been paid must be submitted"). Thus the process of determining the Maine estate tax is somewhat protracted, but this process is mandated by the statute.[6] The unambiguous language of section 3741 dictates that the Assessor cannot make a definitive determination of the Maine estate tax until all other state death taxes have been determined and paid and until the Internal Revenue Service definitively computes "the estate tax payable to the United States under [the 1926] Federal Revenue Act."

The legislative intent embodied in section 3741 dictates the same result. In 1926, Congress granted a credit for state death taxes equal to up to 80% of the federal estate tax as then enacted. The federal credit was designed to eliminate state resentment against federal estate taxation and to protect existing state death taxes from being repealed as a result of an interstate competition to attract wealthy residents. *Estate of Fasken*, 19 Cal.3d 412, 417–20, 563 P.2d 832, 834–36, 138 Cal.Rptr. 276, 278–80, *cert. denied*, 434 U.S. 877, 98 S.Ct. 230, 54 L.Ed.2d 157 (1977); J. Hellerstein, *State and Local Taxation* 523 (1961). In addition, the federal tax credit had the effect of encouraging states to enact statutes designed to "pick up" any differential between the maximum allowable federal credit and pre-existing state death taxes. *Fasken*, 19 Cal.3d at 417–20 & nn. 4, 9, 11–12, 563 P.2d at 834–36 & nn. 4, 9, 11–12, 138 Cal.Rptr. at 278–80 & nn. 4, 9, 11–12; J. Hellerstein, *supra*, at 523. The Maine Legislature responded to this incentive by enacting the Maine estate tax. P.L. 1933, ch. 36, §§ 36–40 (codified as amended at 36 M.R.S.A. §§ 3741, 3743–3745 (1978 & Supp. 1984–85). The Legislature explicitly declared that the purpose of the enactment was "to obtain for this State the benefit of the credit allowed under ... the Federal Revenue Act of 1926 to the extent that this State may be entitled by this chapter by imposing an additional tax, and the same shall be liberally construed to effect this purpose." § 3743. In short, Congress by enacting the state death tax credit created an opportunity for states to divert a substantial portion of the then existing federal estate tax to themselves, and Maine along with other states responded to this opportunity. *See Vance v. South*

---

**6.** The process of determining the Maine estate tax is limited in practice by the statutes of limitations provided under other state death taxes and the federal estate tax. *See* 26 U.S.C. § 2011(c) (1982) (state death tax credit must, with certain exceptions, be claimed within four years of filing a return).

**614**

*Carolina Tax Commission,* 249 S.C. 214, 153 S.E.2d 841, 843 (1967).

Under the statutory formula the Maine estate tax will increase if either a final federal determination increases the federal estate tax payable under the 1926 Act or the final determination of other state death taxes decreases the amount of those latter taxes due. If the process of determining the Maine estate tax were prematurely closed prior to a final determination of these other taxes, then the State would not receive revenues that might otherwise be owed to it. Such a result would violate the intent behind the statute of obtaining for the State the full benefit of the 1926 credit. *See* § 3743.

In the instant case the final determination of other taxes may lead to a redetermination that decreases the Maine estate tax due. Nevertheless, whether the redetermination produces a refund or an additional assessment, the language of the statute and the legislative intent do not permit a final determination of the Maine estate tax until a final determination of the federal estate tax has been made. *Accord Henley v. Boswell,* 55 Ala.App. 414, 316 So.2d 342 (1975); *Stewart v. Oklahoma Tax Commission,* 524 P.2d 935 (Okla.1974); *Vance v. South Carolina Tax Commission,* 249 S.C. 214, 153 S.E.2d 841 (1967). If the initial determination of the federal estate tax leads to the assessment and payment of a particular sum as the state estate tax, then upon the final determination of the federal estate tax, the state must refund any overpayment. *Stewart,* 524 P.2d at 937–38; *Vance,* 249 S.C. at 221–25, 53 S.E.2d at 844–45. *Accord Henley,* 55 Ala.App. at 417–18, 316 So.2d at 345–46 (alternate holding). Otherwise, unnecessary delay in the initial computation of the state tax would result, while the state and the taxpayer awaited, possibly through years of litigation, the final federal determination, or the taxpayer would have to file a protest (in Maine, a petition for reconsideration) with every payment. *Stewart,* 524 P.2d at 937–

38; *Vance,* 249 S.C. at 223, 153 S.E.2d at 845.

We hold, therefore, that when a taxpayer has timely contested, whether by seeking a refund or otherwise, the determination of the federal estate tax, he has preserved his right to a redetermination of the Maine estate tax. *See Stewart,* 524 P.2d at 937; *Vance,* 249 S.C. at 223–24, 153 S.E.2d at 845.

Furthermore, the Maine inheritance tax must be redetermined as well. Under the complex statutory formula of section 3741 the reduction in the federal estate tax and the payment of the New York inheritance tax may each reduce the Maine estate tax. However, under section 3524 the reduction in the federal estate tax may increase the Maine inheritance tax, while under section 3741 an increase in the Maine inheritance tax further decreases the estate tax. Moreover, underlying these opposing increases and decreases is the effect of the settlement of the New York tax claims. In light of these interlocking provisions with opposing effects we find that on the facts of this case a redetermination of the estate tax also requires a redetermination of the inheritance tax in order finally to determine the total sum properly assessed against the estate.

Our conclusion is reinforced by the fact that the executors could not have sought judicial review of the 1977 certification and the 1980 denial of an abatement because there were no appealable issues at that time. Not until the Assessor denied redetermination of the taxes in 1982 after settlement of the New York claims and the final determination of the federal estate tax was there a live justiciable controversy.

While an examination of section 3741 without more has led us to the conclusion that the taxes must be redetermined, a wholly separate line of analysis based on the provisions of Title 36 relating to "return," "assessment," and "certification" leads us to the same result.

A tax "return" is defined in terms of a statutory obligation to report. § 111(4) (Supp.1985–1986) (" 'Return' means any document containing information required by [Title 36] to be reported to the State Tax Assessor."). A series of statutory provisions sets forth when the executor has a duty to report. The executor shall file an inventory of the estate, § 3581 (Supp.1985–1986), shall collect taxes due, § 3582, and shall pay the taxes within 12 months of the death of the decedent although the Assessor may for cause extend the time of payment, § 3681. The estate representative shall report all property that the estate receives even after certification of the tax by the Assessor. § 3524. The Assessor shall then determine and certify the amount, if any, of additional tax due. *Id.* *See also* § 3745 (1978) (inheritance tax provisions apply as well to the estate tax law).

Thus, the statutes strongly articulate the executor's continuing duty to report information and pay taxes, or in other words a continuing duty to file returns. For example, when the executor, as here, pursuant to section 3681 pays taxes within twelve months of the decedent's death, he has filed a "return." *See* § 111(4). The executor, however, has a continuing duty to file returns. Each time he files a return pursuant to the statutory duty, the tax that he declares on the return "shall be deemed to be assessed" at that time. § 141(1) [sentence 1].[7] Thus, the inheritance and estate taxes are not finally assessed until the executor's duty to report ceases. Here the executors were obligated to report to the Assessor the federal estate tax refund. *See* § 3524 [sentence 6] (duty of executor to notify the Assessor when the estate receives additional property). Thus the taxes were not finally assessed until the executors reported the federal refund in June, 1982.

This conclusion is also supported by an examination of the discretionary provisions of section 141. The Assessor has discre-

tionary authority to make a supplemental assessment when any previous assessment is imperfect or incomplete, § 141(1) [sentence 5], as the 1977 certification of taxes was in the instant case. In addition, the Assessor may make an assessment "at any time" when a return has not been filed. § 141(2)(C). *Cf. Gordon v. Halperin,* 447 A.2d 62 (Me.1982) (assessment of income tax deficiency "at any time" if taxpayer has failed to report required information). Because "return" is defined in terms of a duty to report, the Assessor's discretionary authority under section 141(2)(C) remains available until the executor's duty to report ceases. *Cf. id.*

Since the Assessor claims to lack authority to redetermine taxes certified in 1977, we turn to an examination of the certification and determination provision. This section provides in pertinent part:

> The State Tax Assessor shall determine the amount of tax due and payable upon any estate or part thereof and shall certify the amount so due and payable to the persons by whom the tax is payable. The determination and certification may be made upon account of the tax payable upon the estate generally or upon account or in full for any part thereof or any interest therein. Payment of the amount so certified upon account shall be a discharge of the tax to the extent of the certification and *upon subsequent determination and certification of the full amount of the tax payable upon the estate generally or upon any interest therein or part thereof,* payment of the full amount of the tax shall, except as otherwise provided, be a discharge of the tax.

36 M.R.S.A. § 3524 (Supp.1985–1986) [sentences 1–3] (emphasis added). Thus, section 3524 provides for successive determinations and certifications of the tax due until the full amount is paid. It further provides that the federal estate tax "shall be allowed as a deduction" in determining

---

7. We note that section 141 does not define assessment, but provides for a great number of times at which assessment shall or may occur. *See* n.5 *supra.*

the resident inheritance tax, *id.* [sentence 5], and that additional tax shall be determined and certified if the estate receives additional property "after determination and certification of the full amount." *Id.* [sentence 6]. In short, section 3524 prescribes a process of determination and certification that continues until all taxable estate matters are settled.[8]

In summation, under the provisions of Title 36 the executor continues to file returns, and the Assessor to determine, certify, and assess the taxes until all taxable matters are settled. These provisions are consistent with previous holdings of this court that the statute of limitations on an inheritance tax assessment does not begin to run until the amount due can be accurately determined. *Estate of Meier,* 144 Me. 358, 365–66, 69 A.2d 664, 667–68 (1949) (the State's claim to an inheritance tax assessment is not time-barred); *Estate of Cassidy,* 122 Me. 33, 37–38, 118 A. 725, 726 (1922) (the State must defer assessment until uncertainty has become certainty).[9]

In a case closely analogous to the one at bar, the Wisconsin Supreme Court held the Department of Revenue must redetermine the inheritance tax when a disputed claim of debt against the estate was settled after the Department had certified the inheritance tax due and after the statute of limitations had run on the initial certification. *In re Estate of Halsted,* 116 Wis.2d 23, 341

N.W.2d 389 (1983). The court presumed that the Legislature was aware that an initial determination of an inheritance tax necessarily implied that estate matters may still be pending even though the Department of Revenue had issued a certificate. *Id.* at 31, 341 N.W.2d at 393. The court found that the legislature intended that estates should have an opportunity within appropriate time limits to have a court hearing on disputed inheritance tax issues. *Id.* at 29–30, 341 N.W.2d at 392. No statutory provision prohibited the filing of an amended return or the redetermining of the tax due to cover adjustments in the value of the estate, and indeed, the statutes required executors to file returns necessary to cover all taxable estate matters. *Id.* at 31–32, 341 N.W.2d at 393. The court held, therefore, that the statutory certification provision [10] required the Department to issue a new tax certificate each time a tax determination is made based on an amended return. *Id.* at 33, 341 N.W.2d at 394. The taxpayer may then seek judicial review of the new certification within the statutorily provided period. *Id.* at 33–35, 341 N.W.2d at 394.

■ We find the reasoning of the Wisconsin Supreme Court persuasive. We presume that the Legislature was aware that estate matters would still be pending although the Assessor had issued one or more certificates. The executor's continu-

---

**8.** Section 3524 also provides that the Assessor "shall not be required to consider any payments on account of debts, funeral expenses or expenses of administration which have not been allowed by the Probate Court having jurisdiction of the estate." *Id.* [sentence 4]. Since a Maine Probate Court has no jurisdiction over foreign tax authorities, we do not consider this provision applicable to the issues presented in the instant case.

**9.** When it is impossible to compute the present value of any interest, valuation of the interest occurs at the time the beneficiary is entitled to its possession, and the tax is payable when the right of possession to that interest accrues. 36 M.R.S.A. § 3636 (Supp.1985–1986). In such a case the executor shall deposit with the Probate Court a bond sufficient to secure the payment of the tax. *Id.* Similarly, in cases where informa-

tion is not available to make possible a final determination of the tax, the taxpayer may deposit cash or bonds with the Treasurer of State. 36 M.R.S.A. § 3682 (1978). We note that in the instant case the executors made timely payments in 1976 and 1977. These payments may be seen as security for the State's claims that could not be finally determined prior to the federal refund in June 1982.

**10.** The statutory certification provision construed in *Estate of Halsted* provided: "Upon determination of the value of the property and the tax, the department shall issue a dated certificate showing the amount of tax and any interest and penalty." *Estate of Halsted,* 116 Wis.2d at 25 n. 2, 341 N.W.2d at 390 n. 2. This provision is comparable to the first sentence in the Maine statutory certification provision, § 3524.

ing duty to report requires the filing of additional returns. Insofar as an additional return raises new matters, the tax is "deemed to be assessed" at the time the return is filed. Because in the instant case the Assessor has not yet acted pursuant to section 3524 to determine and certify, based on these new matters, the "full amount of the tax payable," the executors' request for a redetermination is not time-barred. Any redetermination by the Assessor and judicial review of the redetermination should be limited to the new matters reported by the executors in 1982. *See Estate of Halsted,* 116 Wis.2d at 33–34, 341 N.W.2d at 394.

We hold, therefore, that the Assessor must redetermine the Maine inheritance and estate taxes payable by the Moore estate in light of the 1982 settlement of the New York tax claims and of the 1982 final determination of the federal estate tax.

The entry is:

Judgment vacated. Remanded to the Superior Court with instructions to remand to the State Tax Assessor for a redetermination, consistent with the opinion herein, of the taxes payable by the estate of Edith P. Moore.

All concurring.