INHABITANTS OF CHARLOTTE *vs.* PEMBROKE IRON WORKS.

Washington.    Opinion February 21, 1890.

*Ways. Nuisance. Rights and remedy of towns. Prescription. R. S., c. 18, § 95.*

As incident to the duties which devolve upon towns and other municipalities as auxiliaries of the sovereign power in the administration of civil government, they have the supervision and control of public ways and streets within their borders, and are to preserve and maintain the rights of the public therein.

These rights of passing upon such ways and streets are public rights, and the whole community have an equal interest and right to all the privileges and advantages of the same, and an equal right to complain of any infringement upon such rights. Encroachments upon such rights which amount to public nuisances, may be prosecuted in behalf of the public.

No length of time, unless there be a limit by statute, will legalize a public nuisance.

A town, suffering special damage from a public nuisance in relation to the highway which it is bound to maintain, may sustain an action for the recovery of such damages against the party maintaining such nuisance.

The statute (R. S., c. 18, § 95) in relation to buildings and fences fronting upon ways and streets, has no application where the act complained of consists in maintaining a dam, whereby the water is caused to overflow the highway, and injure the same.

ON REPORT.

This was an action on the case to recover damages of the defendants for erecting and maintaining a dam on the Pemaquam river, in 1874 and ever since, whereby the county road in the plaintiff town was overflowed, the road-bed injured, and the plaintiffs thereby put to expense for its repair, etc.

The case was referred to a referee who made a report in favor of the plaintiffs,—awarding the sum of five dollars as damages. He also specially reported as follows:

"But I further find and award that the defendants and their grantors have flowed the water upon the road in the same manner and to the same extent, as during the time covered by the plaintiffs' declaration, for more than twenty years prior to the time embraced in this suit; and if, in the opinion of the court, they can acquire a right by prescription to do so as against the plaintiff town, then I determine that the defendants have such right, and that the plaintiffs recover nothing, etc.    *    *    *"

The question, as to which party was entitled to judgment on the referee's report, was submitted by agreement to the decision of the law court.

*Rounds and McKusick*, for plaintiffs.

*McNichol*, for defendants.

FOSTER, J.    The defendants and their grantors had maintained a dam on the Pemaquam river, in the town of Charlotte, on account of which the waters in the outlet of Round pond were raised so that, during portions of the year, they overflowed the highway passing near the foot of the pond, and washed out, gullied and otherwise injured the same, thereby causing the town to incur expenses from year to year in repairing the same.    The water had overflowed the road in the same manner and to the same extent, as during the time covered by the plaintiffs' declaration, for more than twenty years prior to the time embraced in this suit.

The only question presented in this case is, whether the defendants have acquired a prescriptive right thus to overflow and

injure the highway which the town was bound by law to maintain and keep in a condition safe and convenient for public use.

We are satisfied that, as against the town or the public, the defendants have acquired no prescriptive right, which, from mere lapse of time, could render the acts complained of legal, and thus authorize their continuance.

The cases are exceptional which hold that the rights of the municipality or of the public may be lost either by non-user, or by adverse possession, where no statutory enactment intervenes to govern the common law as understood and applied with reference to public rights. The doctrine that to the sovereign power the maxim, *"nullum tempus occurrit regi,"* applies, has long been understood. It is a maxim of the common law which we have inherited from our English ancestors, substituting the public or state for the king. Towns and other municipalities are regarded as public agencies, exercising, in behalf of the state, public duties in the administration of civil government, and as such are but the auxiliaries of the sovereign power.

Highways and streets, where there is no special restriction when acquired, are for the public use and not alone for the people of the town or municipality in which they are located. The use is none the less for the general public because they are situated within such municipality, and because the legislature may have given the supervision and control of them to the local authorities. The whole community have an equal interest and right to all the privileges and advantages of the public ways, and have an equal right to complain of any infringement upon such privileges and advantages.

The rights which the public have are of an easement merely, or the right of passing upon such ways. Although the easement is a public one, and the town, in the distribution of the public burdens and as incident to its recognized duties in connection with the government of the state, is bound to preserve and maintain such easement, yet it cannot be considered in any legal point of view as the easement or property of the town. The town is but the trustee for the public in reference to such easements. "To the commonwealth here," says Chief Justice Gibson,

in *O'Connor* v. *Pittsburg*, 18 Penn. St. 187, "as to the king in England, belongs the franchise of every highway as a trustee for the public." Unauthorized obstructions or erections, which encroach upon these rights, are deemed public nuisances and may be prosecuted in behalf of the public. No length of time, unless there be a limit by statute, will legalize a public nuisance, and in the absence of a grant from competent authority, no presumption from mere lapse of time can be made to support a nuisance which is an encroachment upon the public right.

Principles analogous to the question now before us have been decided by the courts, and whenever they have arisen the current of authority is in one direction.

Thus in the very early case of *Arundel* v. *McCulloch*, 10 Mass. 70, which was for trespass in removing a bridge built across a navigable stream, where it had remained for fifty years, the court held that "public rights cannot be destroyed by long continued encroachments; at least, the party who claims the exercise of any right inconsistent with the free enjoyment of a public easement or privilege must put himself upon the ground of prescription, unless he has a grant or some valid authority from the government; and a right by prescription does not exist in this case."

In Pennsylvania, several cases have arisen involving the principle under discussion, and in *Com.* v. *Alburger*, 1 Whart. 469, 488, the supreme court of that state thus gives expression upon this subject: "These principles pervade the laws of the most enlightened nations, as well as our own code, and are essential to the protection of public rights, which would be gradually frittered away if the want of complaint or prosecution gave the party a right. Individuals may reasonably be held to a limited period to enforce their rights against adverse occupants, because they have an interest sufficient to make them vigilant. But in public rights of property, each individual feels but a slight interest, and rather tolerates even a manifest encroachment than seeks a dispute to set it right."

The same doctrine is discussed and affirmed in *Barter* v. *Com.*, 3 Penn. (Pen. & Watts) 253, where the question arose in relation to the ownership of wells in a public street; *Com.* v. *McDonald*,

16 Serg. & Rawl. 390 ; and *Ring* v. *Schoenberger*, 2 Watts, (Pa.) 23, claim of ownership in a public square ; *Penny Pot Landing Case*, 16 Penn. St. 79 ; *Phila.* v. *Railroad Co.*, 58 Penn. St. 253. In New Jersey, in *Jersey City* v. *Morris Canal Co.*, 1 Beasl. 547, where the doctrine of prescriptive right as against the public was rejected and characterized as eminently disastrous to the public interests ; *Smith* v. *State*, 3 Zab. 712.    In Rhode Island, in *Simmons* v. *Cornell*, 1 R. I. 519.    In New York, in *St. Vincent Orphan Asylum* v. *Troy*, 76 N. Y. 108 ; *Mills* v. *Hall*, 9 Wend. 315, wherein the court held that "there is no such thing as a prescriptive right or any other right to maintain a public nuisance ;" *Milhau* v. *Sharp*, 27 N. Y. 611.    In Mass., see *Stoughton* v. *Baker*, 4 Mass. 522 ; *Com.* v. *Blaisdell*, 107 Mass. 234, 235.    And see *Franklin Wharf* v. *Portland*, 67 Maine, 46, 55 ; *Dwinel* v. *Barnard*, 28 Maine, 554, 570 ; *Knox* v. *Chaloner*, 42 Maine, 150, where it was said that a public nuisance can never be legitimated by lapse of time.

There are decisions which hold that the inclosure and occupation of land within the limits of a highway for twenty years under a claim of right give title by prescription to the land so inclosed and occupied, as against the public.    Such are the cases of *Knight* v. *Heaton*, 22 Vt. 480 ; *Beardslee* v. *French*, 7 Conn. 125 ; *Rowan's Exrs.* v. *Portland*, 8 B. Mon. (Ky. ) 232 ; *Webber* v. *Chapman*, 42 N. H. 326, and others to which we have no occasion to allude, as they have no application to the decision of this case.

In *Cutter* v. *Cambridge*, 6 Allen, 20, where it was held that such occupation or inclosure under a claim of right gave the owner an absolute right as against the public, the decision of the court was based upon the statute provision of that commonwealth which was held to be an innovation upon the common law.    The language of that statute, the court say, recognizes as an existing rule of law, that fences maintained under a claim of right for forty years within the limits of the highway gave the owner an absolute right to continue them there as against the public.

A similar statute exists in our own state (R. S., c. 18, § 95) in which it is provided that where the limits of ways, streets, or

land appropriated to public use, *can* be ascertained by records or monuments, a period of at least forty years must elapse to give any adverse right of possession, and "buildings or fences" fronting upon such land are the only erections mentioned in the statute which will be deemed the true boundaries, even to give an adverse right of possession, as against records or monuments; and that no adverse rights can be acquired, as against the public, in such ways or lands where the boundaries thereof *can not* be made certain by records or monuments, without such erections existing for a period of at last twenty years.

This statute, remark the court, in *Stetson* v. *Bangor*, 73 Maine, 357, 359, "is the only one in this state which in this respect limits the common law force of the maxim, *nullum tempus occurrit regi.*"

In the case before us, there was no such occupancy of the way by any fences or buildings as would give the defendants any rights under the statute. The acts of the defendants in flowing the highway constituted a public nuisance, and, as we have said, the maintaining of a public nuisance for twenty years does not afford any prescriptive right to maintain it. In *New Salem* v. *Eagle Mill Co.*, 138 Mass. 8, the plaintiffs complain of a public nuisance by reason of which they have suffered special damages, as in *Calais* v. *Dyer*, 7 Maine, 155; *Andover* v. *Sutton*, 12 Met. 182, and *Freedom* v. *Weed*, 40 Maine, 383. The referee by his report has awarded such damages as in his judgment the plaintiffs had sustained.

It may be proper to state that, although this action was brought in 1881, the long delay in determining the rights of the parties should not be attributed to the court, for though entered in the law court in 1884, it was not submitted to the court until June, 1889.

*Judgment of the referee affirmed.*

PETERS, C. J., VIRGIN, LIBBEY and EMERY, JJ., concurred.