*2006 ME 104*

**PORTLAND WATER DISTRICT**

v.

**TOWN OF STANDISH.**

Supreme Judicial Court of Maine.

Argued: June 13, 2006.
Decided: Aug. 28, 2006.

Esq., Verrill & Dana, LLP, Portland, for plaintiff.

Kenneth M. Cole III, Esq. (orally), Sally J. Daggett, Esq., Jensen Baird Gardner & Henry, Portland, for defendant.

G. Steven Rowe, Attorney General, Mary M. Sauer, Asst. Atty. Gen., Augusta, (for State of Maine), Patrick J. Scully, Esq., Bernstein Shur Sawyer & Nelson, P.A., Portland, (for Southern Maine Regional Water Council, Maine Water Utilities Assn., Maine Waster Water Control Assn.), for amici curiae.

Panel: SAUFLEY, C.J., and CLIFFORD, ALEXANDER, CALKINS, LEVY, and SILVER, JJ.

SAUFLEY, C.J.

[¶ 1] In this appeal, we are called upon to answer two questions: (1) does the common law doctrine of *nullum tempus occurrit regi,* "time does not run against the king," apply in Maine to prohibit the taking of government owned land by adverse possession or prescriptive easement; and if so, (2) is the quasi-municipal special purpose Portland Water District a governmental entity for the purpose of applying the *nullum tempus* doctrine. We agree with the trial court (Cumberland County, *Humphrey, C.J.*) and answer both questions in the affirmative. Accordingly, we affirm the judgment in which the court declared that the Town of Standish may not assert a public prescriptive easement over the land of the Water District.

## I. BACKGROUND

[¶ 2] This dispute concerns the public's ability to park cars beside a road that provides access to Sebago Lake. The Water District, which owns land adjacent to the lake and asserts title to the land alongside the road, argues that members of the public have not obtained a prescriptive

William S. Harwood, Esq. (orally), Seth W. Brewster, Esq., Scott D. Anderson,

easement to enable them to park on Water District land and access the lake.

[¶ 3] The Water District originally filed a two-count complaint against the Town on June 3, 2004, seeking declaratory judgments that (1) the Water District owns fee simple title to land in Standish adjacent to a traveled right-of-way known as the Northeast Road Extension, which runs from Route 35 to the shore of Sebago Lake ("the adjacent land"); and (2) the public does not have a prescriptive easement to obtain access over, or to use, the adjacent land. The Town moved to dismiss the complaint or, in the alternative, for joinder of necessary parties. The court ordered that the Water District join the heirs of the Proprietors of Pearsontown (the former name of Standish) to pursue its title claim because, when the proprietors conveyed land to a predecessor-in-interest of the Water District, they reserved and excepted "what may have been heretofore laid out for Roads and Landings."

[¶ 4] In response to the court's order, the Water District filed an amended complaint that omitted the first count and sought only a declaratory judgment that the public had not obtained a prescriptive easement over the adjacent land. The Water District moved for summary judgment, submitting a statement of material facts and affidavits. The Town filed an opposing statement of material facts and asserted additional facts. It attached five affidavits, though upon motion, the court struck portions of one affidavit. The Water District filed a reply statement of material facts in response to the new facts asserted by the Town.

[¶ 5] The parties' statements of material facts, as augmented by the court's order on the motion to strike, reveal the following. The Water District is a quasi-municipal, special-purpose district with a princi-pal place of business in Portland. *See* P. & S.L.2001, ch. 25, § 1. The Water District, organized under private and special laws enacted by the Legislature, provides water service in the greater Portland area to roughly 200,000 people. The Water District obtains water for its customers from intake pipes at the southern edge of Sebago Lake. An elected board of trustees governs the Water District. P. & S.L. 2001, ch. 56, § 1.

[¶ 6] The land in dispute lies on both sides of the Northeast Road Extension in the Town of Standish. The road now known as Northeast Road Extension was first conceived in 1767, when the Town's proprietors met and voted to establish it as an eight-rod-wide road. In 1933, the Cumberland County Commissioners redefined the Northeast Road Extension to be a six-rod-wide county highway.

[¶ 7] Some of the land in the area of the Northeast Road Extension was used on occasion for rail transportation and access to a ferry terminal between 1870 and 1935, when the Water District obtained the land. As of 1933, there was a public float at the end of the road. In the time since the Water District obtained the land, members of the public have used the Northeast Road Extension for access to Sebago Lake and the Town has maintained a boat ramp and some parking in the area without the permission of the Water District.

[¶ 8] In 1993, the Drinking Water Program of the Maine Department of Human Services granted the Water District a waiver of a filtration requirement imposed by federal law. For the Water District to maintain the waiver, federal regulations require demonstration "through ownership and/or written agreements with landowners within the watershed that it can control all human activities which may have an adverse impact on the microbiological

quality of the source water." 40 C.F.R. § 141.71(b)(2)(iii) (2005).

[¶ 9] In December 2003, the Water District applied to the Town to permit construction of an ecology and education center in the boat ramp area. The application proposed regrading the traveled way, creating a bus turnaround, and creating parking spaces adjacent to the six-rod-wide right-of-way. The Town did not acquiesce in this plan, but instead asserted that the public had a prescriptive claim to the land the Water District wished to develop. The current litigation followed.

[¶ 10] Based on the summary judgment record, the court entered a summary judgment[1] in favor of the Water District:

The public has not acquired, and does not have, any prescriptive rights to cross or use the land of Plaintiff Portland Water District situated in the Town of Standish, County of Cumberland and State of Maine, on the Southerly and Southwesterly shore of Sebago lake, and being adjacent to and on both sides of Northeast Road Extension, so-called, which land of Plaintiff is more particularly bounded and described in two deeds from the Portland and Ogdensburg Railway to Plaintiff, both dated March 23, 1935, and recorded in the Cumberland County Registry of Deeds at Book 1468, Page 487 and at Book 1468, Page 491.

[¶ 11] The Town timely appealed from the summary judgment. The Southern Maine Regional Water Council, Maine Water Utilities Association, and Maine Wastewater Control Association, have filed an amicus brief discussing the application of the *nullum tempus* doctrine. The State of Maine also filed an amicus brief on this issue.

## II. DISCUSSION

A. Public Prescriptive Easement Predating the Water District's Ownership

[¶ 12] The court concluded that the Town did not acquire a public easement before the Water District obtained its land because, taking into account that the court struck portions of the affidavit supporting certain statements of material facts,[2] the government records from 1870 to 1935 failed to establish the public's continuous use of the land for twenty years or more. Based on the summary judgment record, the court's conclusion is correct. Although the Town produced evidence establishing the existence of a train station in the late 1800s and a public float in 1933, this evidence does not demonstrate usage for the necessary prescriptive period. None of the evidence describes or depicts what portion of the land was used by the public or establishes the duration of the varied types of usage. Based on the limited facts presented, the court correctly concluded that the Town failed to raise a genuine issue of material fact regarding the public's acquisition of a prescriptive easement *before* the Water District obtained title to land on Sebago Lake.

---

1. In reaching its conclusions, the court did not adjudicate fee ownership in the disputed land and carefully worded its conclusions to articulate the limited scope of its decision. The court stated that its conclusion affected the Water District land as it was "bounded and described in two deeds from the Portland and Ogdensburg Railway." Accordingly, the court's grant of summary judgment on the count alleging a prescriptive easement was limited to the extent of the Water District's title. To the extent that title remains disputed, it has not been adjudicated, and we do not address the fee ownership here.

2. The Town does not, in this appeal, challenge the court's decision to strike portions of the affidavit.

### B. Public Prescriptive Easement After the Water District Obtained the Land

#### 1. Continued Vitality of the *Nullum Tempus* Doctrine

[¶ 13] We next address the court's conclusion that the public could not obtain a prescriptive easement after the Water District obtained the adjacent land. The Town argues that the court erroneously expanded the *nullum tempus* doctrine to protect a quasi-municipal special purpose district from a public prescriptive easement. As a municipality itself, the Town argues that public policy favors its claim that the public has obtained a prescriptive easement over the land.

[¶ 14] Whether the *nullum tempus* doctrine shields the Water District from the assertion of a prescriptive easement is a question of law. *Cf. Sandmaier v. Tahoe Dev. Group, Inc.*, 2005 ME 126, ¶¶ 7–8, 887 A.2d 517, 518–19 (discussing the legal vitality of the *nullum tempus* doctrine). We review questions of law de novo. *See Graves v. S.E. Downey Registered Land Surveyor, P.A.*, 2005 ME 116, ¶ 9, 885 A.2d 779, 781.

[¶ 15] The common law rule that time does not run against the king (*nullum tempus occurit regi* ) is a broad common law doctrine that arises from the doctrine of sovereign immunity. *See City of Colorado Springs v. Timberlane Assocs.*, 824 P.2d 776, 777–78 (Colo.1992). Two important common law doctrines arise from the *nullum tempus* doctrine: (1) the exception of the sovereign from statutes of limitations,[3] *State v. Crommett*, 151 Me. 188, 193, 116 A.2d 614, 616–17 (1955); *Inhabitants of Topsham v. Blondell*, 82 Me. 152, 154, 19 A. 93, 94 (1889); and (2) the rule that property interests may not be obtained from a governmental entity by adverse possession, *Sandmaier*, 2005 ME 126, ¶ 7, 887 A.2d at 518–19; *see also Inhabitants of Charlotte v. Pembroke Iron Works*, 82 Me. 391, 396, 19 A. 902, 904 (1890).

[¶ 16] We abolished a related doctrine, the common law doctrine of governmental immunity from tort claims, in 1976. *Davies v. City of Bath*, 364 A.2d 1269, 1272–73 (Me.1976). Shortly thereafter, the Legislature enacted the Maine Tort Claims Act, 14 M.R.S. §§ 8101–8118 (2005), to provide statute-based immunity from tort claims for governmental entities subject to limited exceptions. P.L.1977, ch. 2, § 2 (effective Jan. 31, 1977); *see Darling v. Augusta Mental Health Inst.*, 535 A.2d 421, 424 (Me.1987). With this change, the Legislature became vested with the authority of the sovereign to consent to be sued in tort. *See id.*

[¶ 17] Notwithstanding the demise of common law governmental tort immunity, recently we reaffirmed the related, but distinct, common law rule that a party cannot assert a claim of title by adverse possession or prescriptive easement against a governmental entity. *Sandmai-*

---

**3.** The Town cites to a number of opinions from other jurisdictions holding that the demise of common law sovereign immunity from tort liability abrogated the *nullum tempus* doctrine to the extent that it provided governmental entities relief from statutes of limitations. *See, e.g., Shootman v. Dep't of Transp.*, 926 P.2d 1200, 1205–06 (Colo.1996); *New Jersey Educ. Facilities Auth. v. Gruzen P'ship*, 125 N.J. 66, 592 A.2d 559, 560–61 (1991); *State ex rel. Condon v. City of Columbia*, 339 S.C. 8, 528 S.E.2d 408, 412–14 (2000). In at least one other jurisdiction, the *nullum tempus* doctrine was held to have survived the demise of common law sovereign immunity from tort liability because it was based on a different, and still compelling, rationale. *Commonwealth, Dep't of Transp. v. J.W. Bishop & Co., Inc.*, 497 Pa. 58, 439 A.2d 101, 103–05 (1981). Because the statute of limitations issue is distinct from the adverse possession issue, these cases are not persuasive on the question at issue in the present case.

*er*, 2005 ME 126, ¶¶ 7, 8, 887 A.2d at 518–19; *see also Loavenbruck v. Rohrbach*, 2002 ME 73, ¶ 12, 795 A.2d 90, 93 (stating that a party may not assert a claim of adverse possession against a municipality absent statutory authorization); *Town of Sedgwick v. Butler*, 1998 ME 280, ¶ 6, 722 A.2d 357, 358 (holding that town property cannot be adversely possessed). The assertion of a prescriptive easement against a municipality is prohibited in great part because the acts of possession that establish prescriptive easements are generally even less obvious than those that establish adverse possession and it would be difficult to monitor publicly held lands, many of which are extensive, to interrupt adverse uses. *Sandmaier*, 2005 ME 126, ¶ 8, 887 A.2d at 519.

[¶ 18] Accordingly, we decline to alter centuries-old property law related to possession of land by the government. The Legislature has taken no action to abrogate the principle, nor is there strong public policy supporting such action, in contrast to the changes in tort immunities. As we said in *Sandmaier*, "[u]ntil there is legislative authorization to the contrary," *id.* ¶ 9, 887 A.2d at 519, we will continue to apply the common law rule that a claim of adverse possession or 'prescriptive easement cannot be asserted against land held by the government.

2.  Governmental Status of the Water District

[¶ 19] Apparently recognizing the solid foundation of this common law princi-ple, the Town does not press for the abrogation of the *nullum tempus* doctrine broadly.[4] Rather, it urges us to narrowly hold that a prescriptive easement may be asserted against a quasi-municipal special-purpose district, as distinct from a municipality itself. The next question presented, then, is whether the Water District is a governmental entity protected from the assertion of a prescriptive easement. To determine whether the Water District is the government for these purposes, we must examine the nature of the Water District itself. The Legislature created the Portland Water District in 1907. P. & S.L.1907, ch. 433, *repealed and replaced by* P. & S.L.1975, ch. 84. Currently, the Water District is authorized to supply water to inhabitants of eleven cities or towns, including Standish. P. & S.L.2001, ch. 25, § 2. The Water District is authorized by Public and Special Law to supply water, manage wastewater and sewage, contract with companies that manage wastewater and sewage, erect and install structures to supply water or manage wastewater and sewage, hold and acquire property, excavate roads to perform repairs, exercise eminent domain in certain municipalities, borrow money to issue bonds and notes, grant or loan money, inspect connections to the sewer system, and adopt reasonable rules and regulations. P. & S.L.1975, ch. 84, §§ 2–6, 8–10, 16. The Water District's property is exempt from taxation. P. & S.L.1975, ch. 84, § 17.

---

4.  Even in recent scholarship advocating the abrogation of the *nullum tempus* doctrine as it applies to statutes of limitations, there is an acknowledgement that claims of adverse possession and the like may implicate broader public interests that warrant preserving the doctrine in those circumstances:

    [T]he State may have a difficult time asserting rights with respect to the huge tracts of land it owns, and the public may have a great interest in protecting that land. Such cases might require a different weighing of the competing policies at issue than would be the case for a more routine action by the State to collect damages.

    Sigmund D. Schutz, *Time to Reconsider* Nullum Tempus Occurit Regi—*The Applicability of Statutes of Limitations Against the State of Maine in Civil Actions*, 55 ME. L. REV. 373, 387 (2003).

[¶ 20] Also, although not controlling in determining whether the Water District is a governmental entity, we consider the related legislative pronouncement regarding what types of entities are entitled to tort immunity. The Maine Tort Claims Act defines a "political subdivision" as

> any city, town, plantation, county, ... *quasi-municipal corporation and special purpose district, including, but not limited to, any water district*, sanitary district, hospital district, school district of any type, any volunteer fire association as defined in Title 30–A, section 3151, a transit district as defined in Title 30–A, section 3501, subsection 1, a regional transportation corporation as defined in Title 30–A, section 3501, subsection 2, and any emergency medical service.

14 M.R.S. § 8102(3) (2005) (emphasis added).[5]

[¶ 21] We have also considered whether statutorily created entities were governmental entities in other contexts. In construing the Freedom of Access Act, currently codified at 1 M.R.S. §§ 401–410 (2005), we have held that a hospital administrative district created by a private and special law as a body politic and corporate, P. & S.L.1999, ch. 84, § A–1, is a "political subdivision" for purposes of the Act. *Town of Burlington v. Hosp. Admin. Dist. No. 1*, 2001 ME 59, ¶¶ 3–6, 769 A.2d 857, 859–60. In reaching this conclusion, we took into account the hospital administrative district's authority to issue bonds and its ability to obtain money through taxation. *Id.* ¶ 5, 769 A.2d at 860.

[¶ 22] We also held that a municipal housing authority was a political subdivision for purposes of a statute that preempted the regulation of firearms by political subdivisions. *Doe v. Portland Hous. Auth.*, 656 A.2d 1200, 1202–04(Me.), *cert. denied*, 516 U.S. 861, 116 S.Ct. 171, 133 L.Ed.2d 112 (1995). In addition, for purposes of taxation, we held that a public water district, or a municipality providing water service, is a public entity, not a private corporation, due to its public purposes, powers, and duties. *Inhabitants of Boothbay v. Inhabitants of Boothbay Harbor*, 148 Me. 31, 37–39, 88 A.2d 820, 823–24 (1952); *City of Augusta v. Augusta Water Dist.*, 101 Me. 148, 63 A. 663 (1906). By contrast, we held that a building owned by a county agricultural society, a private corporation, did not provide a public use that rendered the property immune from condemnation because the use by the public was permissive, not a right. *Oxford County Agric. Soc. v. Sch. Admin. Dist. No. 17*, 161 Me. 334, 335–37, 211 A.2d 893, 894–95 (1965).

[¶ 23] Taking into account our earlier pronouncements regarding the qualities that make an entity a governmental entity or political subdivision of the State, we conclude that the Water District is a governmental entity against which a prescriptive easement may not be asserted. The State created the Water District; exempted it from taxation; and granted it the authority to exercise extensive, uniquely governmental functions, including providing water and sewage disposal, maintaining and repairing the infrastructure necessary to achieve those ends, exercising

---

5. Before governmental tort immunity came to be governed by statute, we held that a water district was subject to the rules of liability applicable to private corporations when it performed its private functions. *Woodward v. Livermore Falls Water Dist.*, 116 Me. 86, 90–91, 100 A. 317, 319–20 (1917). The distinction between public and private functions for purposes of immunity from *tort liability* is no longer pertinent, however, because all exceptions to tort immunity are now based on statutes. *See Darling v. Augusta Mental Health Inst.*, 535 A.2d 421, 424 (Me.1987).

eminent domain, and adopting rules and regulations. In addition, the current legislative concept of a political subdivision, 14 M.R.S. § 8102(3), supports the notion that the Water District is a governmental entity.[6]

■ [¶ 24] Finally, the public policy behind the rule that protects a governmental entity from the prescriptive claims of others does not apply any less forcefully because the asserted easement is a *public* easement.[7] Indeed, it may be more difficult to monitor the activities of the public generally than to monitor the activities of individuals or single entities. Accordingly, to vindicate the purpose of protecting government property from being ceded through inaction or oversight, *see Sandmaier,* 2005 ME 126, ¶ 8, 887 A.2d at 519, we hold that the assertion of a prescriptive easement is not permitted against a governmental entity.

[¶ 25] Because we conclude that the Town cannot, as a matter of law, assert a public prescriptive easement against the Water District, we need not determine whether the Town has raised a genuine issue of material fact regarding the elements of a prescriptive easement.

The entry is:

Judgment affirmed.

6. Even if we were to distinguish between public and private functions, as we once did in applying the now abrogated common law doctrine of governmental immunity, *see Woodward,* 116 Me. at 90–91, 100 A. at 319–20, we would conclude that the Water District's ownership and control of land adjacent to its water source constitutes a public function.

7. The Town cites to a case in which the Supreme Court of Washington held that the rationale for prohibiting adverse possession against a governmental entity is inapposite when the party *asserting* an easement is also a governmental entity pursuing a public use. *Highline Sch. Dist. No. 401 v. Port of Seattle,* 87 Wash.2d 6, 548 P.2d 1085, 1089 (1976). We do not adopt this reasoning.