STATE OF MAINE                                           SUPERIOR COURT
KENNEBEC, ss.                                            CIVIL ACTION
                                                         Docket No. AP-08-39
                                                         JMD - KEN - 2/~ ~~ ~~/

MAINE SCHOOL ADMINISTRATIVE
DISTRICT # 27,

                Petitioner

v.                                                       DECISION AND ORDER

MAINE PUBLIC EMPLOYEES
RETIREMENT SYSTEM,

                Respondent


Pursuant to M.R. Civ. P. 80C, the petitioner seeks judicial review of the

respondent Maine Public Employees Retirement System (the System)'s final agency

action. The System assessed back contributions plus interest against the petitioner on

behalf of six secretaries employed by the petitioner. (R. at 37.10.) For the following

reasons, the decision of the System is affirmed.

FACTS

Between 1973 and 1987, the petitioner hired six employees as school secretaries:

Joan Michaud (July 1973); Julie Taylor (April 1982); Ina Mae St. Jean (September 1986);

Marilyn Pinette (hired in 1978, began work as a school secretary in March 1980); Marsha

Pelletier (hired in 1979, began work as a school secretary in November 1981); and Mary

Daigle (hired in 1978, began work as a school secretary in November 1981). (R. at 1.4,

1.21.-.23, 1.27, 1.34-.37, 10.4.) Although required by statute at the time, none of the

employees were initially enrolled as System members when first placed into a

secretarial position, and employee contributions to the System were not withheld from

their pay at that time. (See id.) Instead, for varying lengths of time, petitioner withheld

and submitted Social Security contributions to the Social Security Administration. (Id.

at 1.27, 1.38.) Subsequently, at different points between July 1981 and March 1989, the petitioner discontinued withholding Social Security contributions and began deducting System contributions on behalf of each employee.[1]

In November of 2000, the System received an inquiry from three of the employees regarding their credible service and the possibility of purchasing service credit for back service with the petitioner, prior to the date they became System members. (Id. at 1.21-.25.) On December 22, 2000, the System requested additional information from the petitioner necessary to process the employees' requests.[2] (Id. at 1.25.) On June 23, 2003, the System advised that the petitioner owed $34,752.12 in back contributions and interest for the periods between which employees St. Jean, Taylor, and Michaud were first employed as secretaries and when employee contributions were first deducted and paid to the System on their behalf. (Id. at 1.27.) The petitioner, reserving its right to appeal, paid on July 16, 2003. (Id. at 1.29, 1.40-.41.) On December 11, 2003, the System advised petitioner that $46,560.97 in back contributions and interest on behalf of employees Daigle, Pinette, and Pelletier was due. (Id. at 1.38-.39.) The

---

[1] The following chart summarizes the employment history of the employees, which is undisputed. (See, e.g., Pet'r Br. at 2; Resp't Br. at n.1.)

| EMPLOYEE | HIRED/FICA WITHHELD | 1st DESIGNATED SECRETARY | 1st SYSTEM CONTRIBUTION |
|---|---|---|---|
| Michaud | July 1973 | July 1973 | July 1981 |
| Daigle | October 1978 | November 1981 | March 1989 |
| Pinette | October 1978 | March 1980 (part time) | December 1984 |
| Pelletier | August 1979 | November 1981 | December 1988 |
| Taylor | April 1982 | April 1982 | December 1988 |
| St. Jean | September 1986 | September 1986 | December 1988 |

(R. at 1.21.-23, 1.27, 1.34-.37, 10.4.)

[2] Petitioner agues that "[t]he failure to withhold and remit Maine State Retirement contributions on behalf of the six employees was first raised by the System in or about June 2003." (Pet'r Br. at 2.) The record indicates that, on or about 1994, the System conducted at least one audit of the petitioner' because the System was "concerned about possible misclassification of clerical employees in the District." (R. at 18.1.) The audit apparently did not identify any problems or deficiencies. (Id. at 18.2.) Further, the record reveals that, while not explicitly raising the issue, the System's 12/22/2000 letter requested earnings information and job descriptions to process the three employees' inquiries. (Id. at 1.25.) Despite repeated requests for this information following the 12/22/2000 letter, the System did not receive the information from petitioner for over two years. (Id. at 1.19, 1.26, 1.30.)

2

petitioner did not pay, and requested review by the Executive Director of the staff decisions regarding the six employees. (Id. at 1.40-.41.) The Executive Director affirmed the staff decisions, and the System's Board of Trustees, on appeal, upheld the decision of the Executive Director, finding that the System was authorized to assess back contributions and interest against the petitioner on behalf of the six employees. (Id. at 37.10.)

STANDARD OF REVIEW

When the decision of an administrative agency is appealed pursuant to M.R. Civ. P. 80C, this court reviews the agency's decision directly for abuse of discretion, errors of law, or findings not supported by the evidence. Centamore v. Dep't of Human Servs., 664 A.2d 369, 370 (Me. 1995). "An administrative decision will be sustained if, on the basis of the entire record before it, the agency could have fairly and reasonably found the facts as it did." Seider v. Bd. of Exam'rs of Psychologists, 2000 ME 206, ¶ 9, 762 A.2d 551, 555 (citing CWCO, Inc. v. Superintendent of Ins., 1997 ME 226, ¶ 6, 703 A.2d 1258, 1261). The court will "not attempt to second-guess the agency on matters falling within its realm of expertise" and judicial review is limited to "determining whether the agency's conclusions are unreasonable, unjust or unlawful in light of the record." Imagineering, Inc. v. Superintendent of Ins., 593 A.2d 1050, 1053 (Me. 1991). "Inconsistent evidence will not render an agency decision unsupported." Seider, 2000 ME 206, ¶ 9, 762 A.2d at 555. The burden of proof rests with the party seeking to overturn the agency's decision, and that party must prove that no competent evidence supports the Board's decision. See Bischoff v. Bd. of Trs., 661 A.2d 167, 170 (Me. 1995).

When reviewing an agency's interpretation of a statute that is both administered by the agency and within the agency's expertise, the first inquiry is whether the statute is ambiguous or unambiguous. Competitive Energy Servs., LLC v. Pub. Utils. Comm'n,

3

2003 ME 12, ¶ 15, 818 A.2d 1039, 1046. If the statute is unambiguous, it is interpreted according to its plain language. Arsenault v. Sec'y of State, 2006 ME 111, ¶ 11, 905 A.2d 285, 288. If, instead, the statute is ambiguous, deference is given to the agency's interpretation if the interpretation is reasonable. Id.

DISCUSSION

The central issue in this case is whether the System had the authority to assess the petitioner for contributions that should have been made on behalf of the six employees. In its decision, the System relied on two statutes, 5 M.R.S. §§ 17203[3] and 1754(9), in concluding that it was authorized to "impose assessments against the [petitioner] for back employee contributions plus interest." (R. at 37.8.) Essentially the same arguments are pressed by the System on appeal. The petitioner counters that: (1) if applicable, these provisions do not authorize shifting employee contribution obligations to the petitioner; (2) these provisions were enacted after the employment periods at issue and are thus inapposite to the instant dispute; and (3) the System's actions are barred under applicable statutes of limitations or the equitable doctrine of laches. (Pet'r Br. at 1-2, 4.) Each of the petitioner's arguments will be addressed in turn.

I. Whether 5 M.R.S. §§ 17203 and 17154(9) authorize the System's actions

The first provision upon which the System relied, 5 M.R.S. § 17203, provides, in pertinent part:

> 1. CERTIFICATION AND DEDUCTION. The board shall certify to the chief administrative officer of each department, school and participating local district and the chief administrative officer shall cause to be deducted from the compensation of each member on each payroll of the department, school or participating local district for each payroll period, the appropriate percentage of earnable compensation to be contributed. . .

---

[3] The System's decision cites to 5 M.R.S. § 17103, rather than section 17203, in summing up its final conclusion. (R. at 37.8.) Read in context, this inapplicable citation appears to be merely a scrivener's error.

4

B. Amounts deducted from the compensation of teachers must be paid to the State Employee and Teacher Retirement Program by the chief administrative officer of each school administrative unit monthly in accordance with rules of the board. Delinquent payments due under this paragraph:

> 1) May be subject to a late fee as directed by the board and interest at a rate, to be set by the board and paid by the school administrative unit, not to exceed regular interest by 5 or more percentage points;

> 2) May be recovered by action in a court of competent jurisdiction against the school administrative unit; or

> 3) May, at the request of the retirement system, be deducted from any other money payable to that school administrative unit.

The petitioner argues that this provision extends an employer's payment obligation to those "amounts deducted from the compensation of teachers," but says nothing "either explicitly or implicitly, about an employer paying amounts it has never deducted from employee compensation, nor does it authorize the shifting of payment responsibility from employee to employer." (Pet'r Br. at 7.) Accordingly, petitioner asserts, because petitioner never deducted employee contributions specifically for payment to the System, the System lacks authority to compel payment by the petitioner. The System counters that section 17203 makes no distinction for the reason for the deduction and thus funds were, in fact, deducted, albeit for Social Security. Moreover, the System maintains that the argument posed by petitioner was addressed and rejected in <u>Biddeford School Department v. Maine State Retirement System and Leslie Puchalski</u>, No. AP-97-052 (Me. Super. Ct., York Cty., June 23, 1998) (Perkins, J.) [hereinafter <u>Puchalski</u>]. The court in <u>Puchalski</u> rejected the Biddeford School Department's argument that because it did not deduct any amounts from an employee's

5

compensation it had no duty to pay un-deducted contributions to the System, reasoning that

> [p]ursuant to section 17203 each school administrative unit is, first of all, required to deduct "the appropriate percentage of earnable compensation to be contributed" from the take-home pay of MSRS[4] members and, secondly, is required to pay over that amount to the MSRS. This construction of the statute is supported by its plain language of section 17203 and, in addition, is the interpretation placed on that statute by the MSRS, the agency charged with administering the statute, and therefore is due considerable deference.

Id. at *2-3.

Nevertheless, the petitioner contends that Puchalski was wrongly decided because the decision was founded upon an inaccurate theory that section 17203 creates an independent payment obligation on the part of the employer. (Pet'r Br. at 11.) Instead, the petitioner posits that section 17203(1)(A)-(C) is merely a mechanism by which employee-member contributions are "picked up"[5] by employers, essentially creating the legal fiction that employee contributions to the retirement plan are "employer" contributions, so as to ensure that employees enjoy certain tax benefits permitted by federal law. (Pet'r Br. at 10-11); see also 5 M.R.S. § 17701(3) (although "[p]ick-up contributions shall be treated as the employer's contribution in determining [federal] tax treatment," "[f]or all other purposes, pick-up contributions shall be treated in the same manner and to the same extent as member contributions were treated before the effective date of this section"); 5 M.R.S. § 17702 (referring to contributions "picked up by the employer" under section 17203). Where, petitioner argues, as here, there is no withholding for contribution to the System and thus nothing to "pick up,"

---

[4] The Maine Public Employees Retirement System was formerly known as the Maine State Retirement System, or MSRS.

[5] Designated employee contributions to a qualified governmental pension plan, like the System, are treated as tax deferred employer contributions where the employer "picks up" the employee contributions. See 26 U.S.C. 414(h)(2).

6

the objectives underlying section 17203 do not apply. (Pet'r Br. at 11.) The court cannot agree. Even assuming petitioner's characterization of the statutory scheme is accurate, Puchalski did not impose "an independent payment obligation" on the part of the employer; rather, consistent with the plain language of the statute, the System may recover from the employer amounts the employer failed to deduct on behalf of the employee. Cf. Lancaster v. Pub. Employees Ret. Sys., 32 N.E.2d 144, 138 (Ohio Ct. App. 1987) (construing similar Ohio retirement law to hold employer liable for all contributions the employer failed to deduct from employee's salary). Responsibility for deducting contributions from member-employees is statutorily placed upon the employer. See 5 M.R.S. § 17203(1) ("local district and the chief administrative officer shall cause to be deducted from the compensation of each member"). Where deductions are not properly made, responsibility for the unpaid contribution must lie somewhere. The System's interpretation, supported by the plain language of the statute, allows the System to recover from the party responsible for making the deduction and forwarding the funds: the employer-school. See Porter v. Maine State Ret. Sys., 609 A.2d 1146, 1149 (Me. 1992) ("In determining the meaning of a statute, th[e] court looks first to the language of the statute itself.").

Neither of the cases cited by the petitioner alter this conclusion. Petitioner points to Cloutier v. Maine State Retirement System, No. CV-89-303, 1989 Me. Super. LEXIS 207 (Me. Super. Ct., And. Cty., Oct. 12, 1989) (Bradford, J.), for the proposition that member-employees, rather than employers, bear the responsibility for unmade contributions. (Pet'r R. Br. at 3.) In Cloutier, the court upheld the System's decision to hold retired employees liable for excess retirement payments they erroneously received after becoming reemployed. Id. at *1-2, 8-9. The employees' employer incorrectly advised the employees that certain "restoration to service" provisions did not apply to

them, and, consequently, the employer did not report the employees' income to the System, and deductions from their retirement benefits were not taken. Id. at *2-3. Although the employees complained that the employer's misinterpretation of the restoration to service statute caused them to incur liability, the court found that the statutory provision at issue, which provided that the "recipient of the service retirement benefit shall reimburse the retirement system for any excess payments not deducted,"[6] unambiguously placed liability on the employees. Id. at *8-9. Cloutier's holding, where statutory language specifically provided that a recipient-employee was required to reimburse the System for payments not deducted, has no application to this case. Cloutier does not reflect a general concept of employee responsibility for unmade contributions, particularly in light of the language in section 17203.

The petitioner also refers to a passage in Berry v. Board of Trustees, Maine State Retirement System, 663 A.2d 14 (Me. 1995), where the Law Court noted:

> Teachers' retirement pensions are funded partially by teacher contributions of a percentage of earnable compensation and partially by general state appropriation. 5 M.R.S.A. §§ 17154(6), 17701 (1989 & Supp. 1994). Under this arrangement, the school districts bear no financial responsibility for funding retirement, and therefore have little incentive to control the level of retirement benefits.

Id. at 16. Petitioner argues that Berry stands for the proposition that there is "no statutory mechanism by which a school district can be lawfully required to bear responsibility for satisfying the member contribution obligations of its employees." (Pet'r Br. at 8.) In Berry, shortly before several teacher-employees retired, they received payment from their respective district-employers for unused, accumulated sick leave. Id. at 16. After retirement, the employees were informed by the System that their retirement benefits had been erroneously calculated by including the accumulated sick

---

[6] 5 M.R.S.A. § 18457(2) (1988), repealed by P.L. 2001, ch. 699, § 4.

8

leave, and the System would reduce their benefits and attempt to collect overpayments already made. Id. In upholding the System's decision, the Law Court recognized that the issue in Berry was "whether the amount of the sick leave payments made to plaintiffs as an incentive to retire may be recognized for the purpose of computing their monthly retirement stipends." Id. at 16. Although the passage quoted by petitioner could be read broadly to support its position, read in context of the issue before the Law Court, this court declines to adopt the petitioner's interpretation. Granted, the amounts deducted by employer-schools are from employees' earnable compensation, and in a sense, employer-schools are not directly financially responsible under this arrangement. However, where employer-schools fail to properly deduct amounts on behalf of employees, a task vested in employer-schools statutorily, they may be responsible for this failure when the System seeks to rectify the discrepancy. See 5 M.R.S. § 17203.[7]

II.  Whether 5 M.R.S. §§ 17203 and 17154(9) apply to this case

Petitioner agues that the provisions upon which the System relies were enacted after the employment periods at issue and, as there is no indication that the Legislature intended the provisions to apply retroactively, they are inapplicable to this case. (Pet'r Br. at 3-5, 13-14.)

Neither 5 M.R.S. § 17203 nor 5 M.R.S. § 17154(9) contains an express indication of legislative intent regarding possible retroactive application. The parties do not contend,

---

[7] The court also finds the System's interpretation of 5 M.R.S. § 17154(9) is reasonable to the extent that provision is ambiguous. Petitioner's overly narrow construction that section 17154(9) "encompasses only the *additional* amount paid for otherwise-unneeded services of an actuary," (Pet'r Br. at 15), is belied by the plain language of the statute, which provides that "[t]he employer is liable for amounts not recovered from the retiree and for costs incurred in resolving problems caused by the employer's actions." 5 M.R.S. § 17154(9). Not only is this sentence separate from the preceding sentence containing the modifier "additional actuarial and administrative costs," petitioner's construction of this modifier is untenable. There are actuarial costs to the System, aside from the cost of the services of an actuary, if adequate funding is not set aside. See, e.g., Me. Const. art. IX, § 18-A (the System "must be funded on an actuarially sound basis"); BLACK'S LAW DICTIONARY 36 (7th ed. 1999) (defining "actuarially sound retirement system").

9

nor does this court find any such expression of retroactivity necessarily implied. Accordingly, neither section 17203 nor section 17154(9) applies retroactively. See Terry v. St. Regis Paper Co., 459 A.2d 1106, 1109 (Me. 1983) ("[T]he fundamental rule of statutory construction strictly followed by this Court [is] that all statutes will be considered to have a prospective operation only, unless the legislative intent to the contrary is clearly expressed or necessarily implied from the language.").

However, that the Legislature did not intend retroactive applicability is dispositive only if the System's application of sections 17203 and 1754(9) is, in fact, a retroactive application. "Legislation is considered retroactive if its application determines the legal significance of acts or events that occurred prior to the statute's effective date."[8] Liberty Mut. Ins. Co. v. Superintendent of Ins., 1997 ME 22, ¶ 9, 689 A.2d 600, 602; Terry, 459 A.2d at 1108. Conversely, application of a statute is "prospective if it governs operative events that occurred after its effective date, even though the entire state of affairs includes events predating the statute's enactment."[9] Barnes v. Comm'r of the Dep't of Human Serv., 567 A.2d 1339, 1341 (Me. 1989) (quoting Norton v. C.P. Blouin, Inc., 511 A.2d 1056, 1060 n.5 (Me. 1986)). Here, the "operative events" include the six employees' employment with the petitioner as school secretaries, which resulted in their becoming mandatory members of the System,

_____

[8] Although petitioner points to 1 M.R.S. § 302, a legislatively created rule of construction, this provision only applies to actions or proceedings pending on the date the statutory change was enacted, Heber v. Lucerne-in-Maine Village Corp., 2000 ME 137, ¶ 8, 755 A.2d 1064, 1066, or to a "punishment, penalty or forfeiture" incurred prior to the amendment. Because imposing assessments against the petitioner for back employee contributions cannot seriously constitute a "punishment, penalty or forfeiture," see Reagan v. Racal Mortgage, Inc., 1998 ME 188, ¶¶ 7-14, 715 A.2d 925, 927-29, and because the System did not begin seeking this assessment until 2003, 1 M.R.S. § 302 is inapplicable. Nevertheless, judicially created, common law principles still apply. See, e.g., Heber, 2000 ME 137, ¶ 10, 755 A.2d at 1066; Riley v. Bath Iron Works Corp., 639 A.2d 626, 628 (Me. 1994) (distinguishing situations in which section 302 applies with situations in which the common law presumption applies).

[9] The distinction between these concepts is often referred to as the distinction between substantive and procedural provisions. The Law Court, however, has found that "labels such as retroactive, prospective, substantive, and procedural are subject to manipulation" and therefore of little assistance. Sinclair v. Sinclair, 654 A.2d 438, 439 (Me. 1995).

10

triggering the required employee contributions at issue. It is undisputed that all service involved in this case pre-dates 1989. (Resp't Br. at 9; see supra note 2.) Thus, applying 5 M.R.S. § 17203 and 5 M.R.S. § 1754(9), which became effective on 9/30/89 and 6/30/92, respectively, to place the responsibility for delinquent contributions for service occurring before 1989, would clearly be retroactive application. The System argues, however, that these statutory provisions do not impose any new substantive requirements, but merely implement already existing legal requirements. (Resp't Br. at 9, 10, 12; R. at 37.7-.8.) Essentially, the System argues that sections 17203 and 1754(9) did not change the "legal significance" of the acts predating their enactment, and instead clarified the already existing requirement that the responsibility for employee contributions not paid to the System falls upon the employer-petitioner. See Liberty Mut. Ins. Co., 1997 ME 22, ¶ 9, 689 A.2d at 602 (retroactive legislation "determines the legal significance of acts or events"); Levy v. Sterling Holding Co., LLC, 544 F.3d 493, 506 (3rd Cir. 2008) (citing supporting case law for the proposition that retroactivity is a "non-issue with respect to new laws that clarify existing law"). Therefore, the System's authority to assess petitioner for contributions that should have been made on behalf of the six employees turns upon whether that authority existed at the time the six employees were hired, prior to the enactment of sections 17203 and 1754(9).

Most of the statutory provisions upon which the System relies were not in place during some or all of the employment periods at issue.[10] Nevertheless, in 1971, prior to the date petitioner's employees became mandatory members of the System, statutory

---

[10] See, e.g., 5 M.R.S. § 17701-A (enacted pursuant to P.L. 1991, ch. 780, §§ HHH-1, HHH-11; applies to persons hired after July 1, 1992); 5 M.R.S. § 17701-B (enacted pursuant to P.L. 1993, ch. 410, § L-28; applies only to member contributions made on or after July 1, 1993); 5 M.R.S. § 17050 (enacted pursuant to P.L. 1985, ch. 801, §§ 5, 7; effective January 1, 1987); 5 M.R.S. § 17801 (enacted pursuant to P.L. 1999, ch. 489, § 3 (effective September 18, 1999), repealing P.L. 1987, ch. 739, §§ 25, 48); 5 M.R.S. § 17253 (enacted pursuant to P.L. 1985, ch. 801, §§ 5, 7; effective January 1, 1987); Me. Const. Art. IX § 18-A (requires that the System be "funded annually on an actuarially sound basis" beginning with the fiscal year starting July 1, 1997).

provisions in effect placed responsibility for deducting contributions from member-employees on employer-schools. See 5 M.R.S.A. § 1062(2) (1971). Specifically, section 1062(2)(A) parallels section 17203(1)'s language in providing that

> [t]he board of trustees shall certify to the head of each department, and the head of each department shall cause to be deducted from the compensation of each member . . . the proportion of earnable compensation of each member so computed. . . . The head of each department shall certify to the board of trustees . . . the amounts deducted. Each of said amounts shall be deducted . . . .

Id. § 1062(2)(A). Moreover, dating back to 1942, the System's board was vested with the "general administration and responsibility for the proper operation of the retirement system and for making effective the provisions of [the] act." See P.L. 1941, ch. 328, § 227-K(1). Although 5 M.R.S. § 17203(1)(B)(1)-(3)'s language explicitly delineating the System's remedial options in the case of delinquent payments was absent in the prior legislative scheme, the System's authority to assess employers for improperly deducted contributions is necessarily implied, particularly in light of the employer's obligation to deduct and forward employee contributions and the System's responsibility to properly operate and effectuate the retirement system laws.[11] See Brown v. Town of Kennebunkport, 565 A.2d 324, 328 (Me. 1989) ("An authorizing statute grants public bodies such powers as may be fairly implied from its language, including those powers necessarily arising from powers expressly granted and those essential to give effect to powers expressly granted."). Because the statutory provisions relied upon by the System, sections 17203 and 17154(9), clarify this authority to the extent that it was

---

[11] Petitioner argues that "the real question is whether it is appropriate or lawful to *imply* an agency right to shift employee/member contribution obligations to an employer, in the face of an *express* statutory scheme requiring that those amounts be paid by the member/employee[.]" (Pet'r Br. at 6.) While petitioner is correct that amounts deducted are from employee compensation, the obligation for deducting those contributions explicitly falls upon the employer. Thus understood, the question becomes whether it is appropriate to imply an agency right to assess the employer for unpaid contributions the employer is statutorily required to deduct from its employees' compensation.

12

previously ambiguous, retroactivity is a non-issue and these provisions were properly applied to the petitioner. See Levy, 544 F.3d at 506-07; (R. at at 37.7-37.8.)

III.   Whether the System's actions are barred by the statute of limitations

Petitioner argues the System's claims are barred by Maine's general statute of limitations.  See 14 M.R.S. § 752.[12]  Because, petitioner argues, the System seeks to recover unpaid employee contributions from nearly two decades ago, section 752's six-year statute of limitations should bar the System's claims.  (Pet'r Br. at 15.)  Petitioner contends that the System's reliance on the "discovery rule"—that the statute of limitations period should not begin to run until the System could accurately verify delinquent payments—is unsupported by case law.  (Pet'r R. Br. at 6.)  Indeed, as a general rule, the limitations period "begins to run as soon as a cause of action accrues, and in the absence of fraud, its running is not delayed even if the cause of action is not immediately discovered." Northeast Harbor Golf Club, Inc. v. Harris, 1999 ME 38, ¶ 22, 725 A.2d 1018, 1024.  Applying the general rule to this case would bar the System's claims against the petitioner for the unpaid contributions.

The System, however, presses this court to apply the doctrine of *nullum tempus*. (Resp't Br. at 15.)  One aspect of the *nullum tempus* doctrine exempts the sovereign from statutes of limitations unless the statute expressly mentions the State by name.[13]  See

---

[12] The court does not accept the System's argument that, because this is an administrative appeal, section 752, which speaks of "civil actions," is inapplicable.  First, 5 M.R.S. § 17203, relied upon by the System, provides that delinquent payments may be "recovered by action in a court of competent jurisdiction." Second, the plain meaning of "civil actions" appears to encompass the current administrative action. See BLACKS LAW DICTIONARY 30 (7th ed. 1999) (defining "civil action" as an "action brought to enforce, redress, or protect a private or civil right").

[13] The System also points to "tolling" language in Estate of Meier, 144 Me. 358, 365-66, 69 A.2d 664, 667-68 (1949), providing that "[e]ven in cases where the sovereign loses rights under statutes of limitation the period thereof does not begin to run until the time when the measure of its claim can be accurately determined." First, the court notes that it is unclear whether this general proposition applies outside of the tax assessment context.  See, e.g., Moore v. State Tax Assessor, 504 A.2d 610, 616 (Me. 1986) (citing Meier for authority that "previous holdings of this court [state] that the statute of limitations on an inheritance tax assessment does not begin to run until the amount due can be accurately determined"). Second, assuming the proposition in Meier can be read more broadly to include other types of actions, it

13

Portland Water Dist. v. Town of Standish, 2006 ME 104, ¶ 15, 905 A.2d 829, 833 (citing State v. Crommett, 151 Me. 188, 193, 116 A.2d 614, 616-17 (1955) and Inhabitants of Topsham v. Blondell, 82 Me. 152, 154, 19 A. 93, 94 (1889)). Petitioner urges that the *nullum tempus* doctrine is an outdated anachronism from English common law and should be abrogated, particularly in light of modern Law Court decisions. (Pet'r Br. at 17-20.) Whether the doctrine should remain good law in Maine has been the subject of some commentary. See, e.g., Sigmund D. Schutz, Time to Reconsider Nullum Tempus Occurit Regi--The Applicability of Statutes of Limitations Against the State of Maine in Civil Actions, 55 ME. L. REV. 373 (2003). Courts in other states appear to be split on this issue. Id. at 383-85. Nevertheless, as it stands, the Law Court has not overruled prior cases applying the *nullum tempus* doctrine, such as Crommett, either explicitly, or in the court's view, implicitly.[14] See Portland Water Dist., 2006 ME 104, ¶¶ 15-18, 905 A.2d at 833-84 (affirming application of an alternative strand of the *nullum tempus* doctrine while acknowledging split in authority regarding the continued viability of the rule providing governmental entities relief from statutes of limitations). Consequently, the statute of limitations does not bar the System's claims.

I. Whether the System's actions are barred by the doctrine of laches

> Laches is negligence or omission seasonably to assert a right. It exists when the omission to assert the right has continued for an unreasonable and unexplained lapse of time, and under circumstances where the delay has been prejudicial to an adverse party, and where it would be inequitable to enforce the right.

Fisco v. Dep't of Human Servs., 659 A.2d 274, 275 (Me. 1995) (quoting Leathers v. Stewart, 108 Me. 96, 101, 79 A. 16, 18 (1911)). Although equitable principles are

---

appears the foundation of Meier is based upon the doctrine of *nullum tempus*. See State v. Crommett, 151 Me. 188, 193, 116 A.2d 614, 616-17 (citing Meier as authority for the *nullum tempus* doctrine). Therefore, the System's alternative Meier argument rises and falls with the viability of the *nullum tempus* doctrine.
[14] Several recent superior court decisions have referenced the *nullum tempus* doctrine. See Schultz, 55 ME. L. REV. 373, 374 n. 6 (listing superior court cases).

applicable to governmental entities such as the System, <u>Maine Sch. Admin. Dist. No. 15 v. Raynolds</u>, 413 A.2d 523, 533 (Me. 1980), the petitioner has failed to establish the requisite elements to bar the System's action. The petitioner took a significant amount of time to bring the secretaries' retirement contributions into compliance with the law, and did so only on a piecemeal basis. Although it is unclear from the record why this process took so long, nearly eight years passed from the time proper deductions began for the first secretary until the correction for the last secretary was made. Moreover, the petitioner took over two years to respond to a December 22, 2000 letter from the System requesting earnings information and job descriptions regarding three of the petitioner's employees. (<u>Id</u>. at 1.19, 1.25, 1.30.) The petitioner has not acted in good faith. <u>See</u> <u>Hamm v. Hamm</u>, 584 A.2d 59, 61 (Me. 1990) ("The clean hands doctrine is crystallized in the maxim that one who comes into a court of equity must come with clean hands."). The court also notes that petitioner did not voluntarily disclose any mistakes regarding incorrect employee contributions to the System, and once discrepancies were brought to the System's attention, the System promptly contacted the petitioner. Finally, the petitioner has not demonstrated prejudice on this record, as any delay had no bearing on the potential liability of petitioner. <u>See</u> <u>Conservatorship of Jackson</u>, 1998 ME 256, ¶ 9, 721 A.2d 177, 179 ("Laches is not merely delay, but delay that is prejudicial to the adverse party.").[15]

The entry is

> The decision of the Maine Public Employees Retirement System is affirmed.

---

[15] Finally, the court notes that laches applies only to equitable actions, and may not be applicable to this administrative proceeding under review. <u>See Jack v. Dep't of Human Servs.</u>, 556 A.2d 1093, 1095 (Me. 1989).

15

Date: February 9, 2009

Justice Joseph Jabar

**Attorney for Petitioner**
Jeffrey T. Piampiano, Bar # 9309
Drummond Woodsum & MacMahon
245 Commercial Street
P.O. Box 9781
Portland, ME 04104

**Attorneys for Respondent, Maine Board of Environmental Protection**
Christopher L. Mann, Bar # 7283
Assistant Attorney General
Office of Attorney General
6 State House Station
Augusta, Maine 04333

**7**

| Date Filed | 5/30/08 | KENNEBEC | | Docket No. | AP08-39 |
|---|---|---|---|---|---|
| | | County | | | |

Action _____ 80C _____

**J. Mills**
**Recused**

J. JABAR

| | |
|---|---|
| MSAD #27 | vs. MAINE PUBLIC EMPLOYEES RETIREMENT SYSTEM |

| Plaintiff's Attorney | Defendant's Attorney |
|---|---|
| Jeffrey T. Piampiano, Esq.<br>PO Box 9781<br>Portland, ME  04104-5081 | Christopher L. Mann, AAG<br>6 State House Station<br>Augusta, ME  04333-0006 |

| Date of Entry | |
|---|---|
| 5/30/08 | Complaint for Judicial Review of Final Agency Action, filed. s/Piampiano, Esq |
| 6/11/08 | Letter entering appearance and opposing petition for review, filed 6/3/08. s/Mann, AAG |
| ---- | Copies of Certified Mail Receipts, filed 5/30/08.  s/Piampiano, Esq. |
| 6/27/08 | Certified copy of Administrative Record, filed 6/20/08.  s/Larochelle, Appeals Clerk  **(in vault)** |
| --- | Notice And Briefing Schedule mailed to attorneys of record. |
| 8/6/08 | Brief Of Petitioner, filed 7/30/08.  s/Piampiano, Esq. |
| 8/19/08 | Response In Opposition To Petitioner's 80C Petition, with attachment, filed 8/13/08.  s/Mann, AAG |
| 8/29/08 | Reply Brief of Petitioner, filed 8/25/08.  s/Piampiano, Esq. |
| 9/10/08 | Petitioners' Request For Oral Argument, filed 9/5/08.  s/Piampiano, Esq. |
| 12/19/08 | Response To The Court's Request For Additional Information, with Exhibits A-K, filed 12/15/08.  s/Piampiano, Esq. |
| 1/14/09 | Miscellaneous statutory provisions, filed.  s/Mann, AAG |
| 2/19/09 | DECISION AND ORDER, Jabar, J.<br>The decision of the Maine Public Employees Retirement System is affirmed.<br>Copies to attys. of record.<br>Copies to repositories |